## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>Defendants. | Case No. 1:21-cv-9582<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff City of Hialeah Employees' Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Peloton Interactive, Inc. ("Peloton" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Peloton; and (d) other public information regarding the Company.

## INTRODUCTION

1.    Plaintiff brings this securities class action on behalf of all persons or entities that purchased or otherwise acquired Peloton's common stock between December 9, 2020 and November 4, 2021, inclusive (the "Class Period").

2.    The claims asserted herein are alleged against Peloton and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

3.     Based in New York City, Peloton is a fitness-equipment and media company. During the Class Period, Peloton sold internet-connected stationary bicycles and treadmills that were designed and marketed for use in customers' homes.  The bicycles and treadmills include connected touchscreen devices through which customers can access exercise classes and other content.  To that end, in addition to the exercise equipment, Peloton sells monthly subscription services that allow customers to access fitness classes using their Peloton equipment, or alternatively to access classes and related content on their own devices, without using Peloton equipment.

4.     For most of 2020 and 2021, as the COVID-19 pandemic and related stay-at-home orders and business closures largely kept individuals out of the gym, the demand for in-home exercise options increased dramatically.  Against that backdrop, in the months leading up to the Class Period, Peloton experienced unprecedented demand for its products and services.  As Defendant Foley confirmed in statements to investors on February 11, 2021, "there's been crazy demand for our products because gyms have been closed or you didn't want to go to the gym because you might get COVID there.  So, the demand has been through the roof . . . ."

5.     Throughout the Class Period, investors were highly focused on whether Peloton's growth would decline once vaccines were approved, businesses reopened, and individuals could return to exercising at the gym.  Defendants repeatedly, falsely assured investors that Peloton's recent success was not primarily due to COVID-related increased demand, but rather that the Company's growth and financial results were sustainable and would continue post-COVID.  For example, on December 9, 2020, the first day of the Class Period, in response to an investor's

question about "how a post-COVID world impacts [Peloton's] view of [its] business opportunity," Defendant Foley assured investors that Peloton's results "ha[ve] nothing to do with COVID. That is a human need of I want to get fit, I want fitness in my life in a consistent way; . . . I want it to be convenient, I want it to be fun, I want it to be motivating, and I want it to be a great value. And all of those things are foundational to what Peloton delivers, always delivered it. We delivered it in pre-COVID, during COVID, and we will deliver it post-COVID."

6.      Defendants also represented to investors during the Class Period that investments in the Company's supply chain, including increasing the number of bikes and treadmills produced and reducing the average time it takes to deliver products to customers, were sound investments that would enable Peloton to align supply and demand for its products. For example, on February 4, 2021, in a letter to Peloton shareholders, the Company stated that "our supply chain investments over the last several months are helping us better match our supply and demand going forward." Accordingly, Defendants represented that the rising inventory levels reported in the Company's periodic financial reports filed with the SEC during the Class Period reflected outstanding demand, including orders that had not yet been filled, rather than excess supply that outpaced waning demand.

7.      Defendants' Class Period representations that Peloton would continue to succeed and grow post-COVID, were false. In truth, Peloton's Class Period financial results were primarily driven by COVID-related increases in demand for at-home exercise options. As gyms have reopened and other outside-the-home exercise options have become more available due to COVID vaccinations being more widespread and other COVID-related restrictions abating, demand for Peloton's equipment and subscription services have declined substantially.

8.      Moreover, rather than matching supply and demand, Peloton had a massive growth

in inventory that far exceeded customer demand.  Further, the Company has admitted that it suffered from a material weakness in its internal control over financial reporting during the Class Period, specifically concerning inventory levels.  In light of that material weakness, the Company could not accurately report its inventory levels, and had no sound basis to represent to investors that supply and demand were aligned.

9.      The truth began to emerge on August 26, 2021, after the market closed, when Peloton disclosed, one day in advance of its announcement of the Company's financial results for its fiscal year 2021, that "in the course of our fiscal 2021 audit process, a material weakness was identified in our internal controls over financial reporting with respect to identification and valuation of inventory."  In the Company's Annual Report for its fiscal year 2021, filed with the SEC on Form10-K on August 27, it further disclosed that "this material weakness arose because our controls were not effectively designed, documented and maintained to verify that our physical inventory counts were correctly counted and communicated for reporting in our financial statements."

10.      As a result of these disclosures, the price of Peloton common stock declined by $9.75 per share, or 8.5%, from a closing price of $114.09 per share on August 26, 2021 to a closing price of $104.34 per share on August 27, 2021.

11.      At the same time, however, Peloton made false, reassuring statements to investors, including issuing guidance of $5.4 billion of total revenue for fiscal year 2022 (beginning September 1, 2021), representing 34% year-over-year growth.  Discussing that guidance, Defendant Woodworth claimed that "we are entering fiscal 2022 with a normalized backlog for our Bike portfolio and guidance reflects our expectation of continued strong demand."

12.      Then, on November 4, 2021, after the market closed, Peloton shocked investors

when it disclosed that it had revised its full year revenue guidance down to a range of $4.4 to $4.8 billion dollars due to declining demand as its customers were increasingly free to exercise outside the home.  And regarding inventory, Peloton disclosed that inventory totaled $1.27 billion, a 35% increase over the prior quarter, 91% of which were "finished products" that the Company still held.

13.     As a result of these disclosures, the price of Peloton common stock declined by $30.42 per share, or 35%, from a closing price of $86.06 per share on November 4, 2021 to $55.64 per share on November 5, 2021, erasing $8.1 billion in shareholder value.

14.     As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's shares alleged herein, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Peloton maintains its headquarters in New York City, New York, which is situated in this District, and many of the acts giving rise to the violations complained of in this action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District.

18.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.    Plaintiff

19.    Plaintiff is a benefit pension plan based in Hialeah, Florida, that provides pension services and benefits to employees, retirees, and beneficiaries of the City of Hialeah.  As indicated in the certification submitted herewith, Plaintiff purchased Peloton common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the securities laws alleged herein.

### B.    Defendants

20.    Defendant Peloton is a fitness-equipment and media company, whose main products are internet-connected stationary bicycles and treadmills that enable monthly subscribers to remotely participate in classes via streaming media.  Incorporated in Delaware, the Company maintains its corporate headquarters at 441 Ninth Avenue, 6th Floor, New York, NY.  Peloton common stock trades on NASDAQ under the ticker symbol "PTON."

21.    Defendant John Foley ("Foley") is, and was at all relevant times, Peloton's Chief Executive Officer ("CEO").  Foley made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

22.    Defendant William Lynch ("Lynch") is, and was at all relevant times, Peloton's President.  Lynch made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

23.    Defendant Jill Woodworth ("Woodworth") is, and was at all relevant times, Peloton's Chief Financial Officer ("CFO").  Woodworth made materially false and misleading representations and omissions to investors during the Class Period, as alleged herein.

24.    Defendants Foley, Lynch, and Woodworth are collectively referred to herein as the "Individual Defendants."   The Individual Defendants, because of their positions with the

Company, possessed the power and authority to control the contents of Peloton's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  The Individual Defendants were provided copies of the Company's reports and press releases alleged in this complaint to be misleading before, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their position and access to material non-public information available to them, the Individual Defendants knew that the adverse facts and omissions specified in this complaint had not been disclosed to, and were being concealed from, the public, and that positive representations and omissions which were being made were then materially false and misleading.

## BACKGROUND

25.     Peloton is a fitness-equipment and media company that is incorporated in Delaware and has its principal place of business in New York, New York.  During the Class Period, Peloton sold two internet-connected stationary bicycles (the "Bike" and "Bike+"), as well as two internet-connected treadmills (the "Tread" and "Tread+"), designed and marketed for at-home use.  The bicycles and treadmills include connected touchscreen devices through which customers can access exercise classes and other content.  To that end, along with the exercise equipment, Peloton sells two subscription services: the "All-Access Membership" that Peloton advertises as providing "full access to Peloton's available classes, content, and features" on Peloton products, "plus access to the Peloton Apps," and the "Peloton App Membership," which Peloton advertises as providing "access to Peloton's available classes, content, and features" but "does not provide you with access to any classes, content, and features on any Peloton Product."

26.     For most of 2020 and 2021, the COVID-19 pandemic was a boon for Peloton. Because stay-at-home orders and business closures kept many people out of the gym, the demand for in-home exercise options increased dramatically.  Throughout the pandemic, including in the

months leading up to the Class Period, Peloton experienced unprecedented demand for its products and services.  As Defendant Foley confirmed in statements to investors on February 11, 2021, demand for Peloton products and services was "through the roof" during the pandemic due to "crazy demand for our products because gyms have been closed or you didn't want to go to the gym because you might get COVID there."

27.     Throughout the Class Period, investors were highly focused on whether the massive growth and financial success that Peloton experienced throughout the pandemic was sustainable and would continue post-COVID.  In addition, investors were highly focused on Peloton's inventory levels and what those inventory levels indicated about present and future demand.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

28.     The Class Period begins on December 9, 2020, when Defendants held Peloton's annual shareholder meeting for 2020.  During that meeting, Defendant Foley responded to an investor's question that asked, "How should we think about how a post-COVID world impacts our view of our business opportunity?"  Foley answered, in relevant part, that "Now that Peloton is here and now that the experiences at home are incredible, that is not—that has nothing to do with COVID.  That is a human need of I want to get fit, I want fitness in my life in a consistent way; every week, I want to get three or four workouts in, and I want it to be convenient, I want it to be fun, I want it to be motivating, and I want it to be a great value.  And all of those things are foundational to what Peloton delivers, always delivered it.  We delivered it in pre-COVID, during COVID, and we will deliver it post-COVID."

29.     On February 4, 2021, Defendants held Peloton's fiscal year 2021 second quarter earnings call, in which each of the Individual Defendants participated.  During that call, Defendant Foley told investors that Peloton had "continued strong demand for our products."  In response to

an analyst's question, Foley reiterated that "We are not seeing a softening of demand.  That is absolutely not what's happening here.  We are seeing incredibly strong organic demand. . . . it's absolutely not a softening of demand. . . . We're seeing robust demand."  Defendant Woodworth then added, "we're still seeing very strong organic demand across all geographies, across all products."

30.     In addition, during the February 4, 2021 earnings call, Defendant Foley responded to an analyst's question regarding whether fall 2020 announcements of the forthcoming COVID vaccine caused any "slowdown" for Peloton.  Foley responded, "When the vaccine was announced in the fall, . . . we did not see any reaction to our sales or demand.  We still have not seen any softening since that vaccine was announced and since the vaccine has been rolling out. . . . the consumers are still feeling like they want to work out at home, the experience . . . is the best in the world and it's getting better. . . . And I think what you're seeing is everyone's starting to realize that working out at home is a better place.  It's a better value.  And so, we're very bullish on our sales opportunities on the other side of the opening . . . So we remain very, very bullish on our opportunity.  We haven't seen any softening of demand."

31.     Also during the February 4, 2021 earnings call, in response to an analyst's question regarding "the shift in behavior and just the shift to working out from home," Defendant Lynch stated that "We do research on consumer perceptions around home fitness and going back to the gym, et cetera. . . . we study the consumer and we have quarterly tracking, and we do bespoke research.  And what's clear is the shift into the home is not a COVID-led phenomenon.  It has accelerated it.  But we see, if anything, as we emerge to whatever the new normal is that the norms haven't changed.  There is a secular shift into fitness in the home.  As John [Foley] has said before, it's a better experience and a better place at a better value.  And consumers are all seeing that.  And

so, everything we've seen in the data, I think Jill [Woodworth] has talked in the past about some of the bespoke research we've done on going back to gyms and consumer perception on that vis-à-vis home workout suggests that certainly, COVID has been a tailwind for our demand. . . . in the home, we see continued momentum in foreseeable future."   Lynch further claimed that the Company was able to accurately forecast demand "on a more mature product line like on the Bike product line."

32.     On February 11, 2021, Defendant Foley participated in a question-and-answer session with a Goldman Sachs analyst during the Goldman Sachs Technology & Internet Virtual Conference.  In response to a question "about what the other side of this pandemic looks like" and "what reopening does to demand for Peloton," Foley stated that "I know there's chatter of, we are a stay at home stock and we go back to normal and Peloton dies or whatever the anxiety would be. We obviously are taking the other side of that.  And I'll tell people, I'll tell everyone on the call that for 20 years, 25 years, every year in the US, there's been 5 million treadmills sold, 5 million treadmills sold in the US every year pre-COVID.  So it's not like working out at home was a COVID thing.  It has always been a thing.  It's just the products have been dopey and not connected."

33.     On March 1, 2021, Defendant Woodworth participated in a question-and-answer session with a JMP Securities analyst during the JMP Securities Technology Conference.  In response to an investor's question of "How do you answer people who say the vaccine will hurt Peloton," Woodworth stated that "when you look at our engagement data, people have found a way not only to replicate exercising outside the home but enjoy it more and perhaps are doing even more than they were even pre-pandemic.  So I feel like this is a trend that's here to stay.  COVID just accelerated that trend and I think as you look out with respect to what our growth algorithm looks

like in a post-COVID world, it's continuing to further penetrate the markets we're in."

34.    On May 6, 2021, Defendants held Peloton's fiscal year 2021 third quarter earnings call, in which each of the Individual Defendants participated.  During the call, Defendant Woodworth stated that "obviously, last year was a big comp.  It was the first few months of COVID.  But that type of growth, over a two-year stack, we're pretty excited about and we believe that that can continue into fiscal 2022."

35.    On May 25, 2021, Defendant Woodworth participated in a question-and-answer session with a J.P. Morgan Securities analyst during the J.P. Morgan Global Technology, Media and Communications Conference.  In response to a question asking "how do you get people comfortable with where Bike demand is heading into warmer weather and into strong reopening," Woodworth stated that "we've lapped COVID now but Bike sales or Bike demand is still over 3x where it was a couple of years ago which, . . . we still see a ton of demand."  Woodworth continued that "there are habits and things that people are now considering that they perhaps would not have considered before.  And I do think working out at home, whether or not they had a Peloton Bike, is something that is on the radar. . . . It's not about just being at home.  It's about the value, convenience, and efficiency of the work out experience that we provide.  And that doesn't change with COVID."

36.    On June 8, 2021, Defendant Woodworth participated in a question-and-answer session with a Bank of America analyst during the Bank of America Global Technology Conference.  Woodworth stated that "the addressable market is a lot bigger than the 180 million people that belonged to a gym [pre-COVID], . . . the opportunity is unchanged since COVID and we're more excited than ever now. . . ."  Moreover, in response to a question about investor concern "that stay-at-home mandates brought forward demand" and how Peloton was "thinking about the

sustainability of very strong 2021, fiscal 2021 trends for you into fiscal 2022," Woodworth responded that "we're fundamentally a different company than we were pre-pandemic" and "we have such a different story to tell than I think we did pre-pandemic." Woodworth also claimed that "we are still in the very, very early innings even based off of what we think is a conservative addressable market."

37.     The statements set forth above in paragraphs 28-36 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading. Contrary to Defendants' multiple representations that Peloton's growth and financial success were sustainable and would continue post-COVID pandemic, in truth, Peloton's Class Period financial results were primarily driven by COVID-related increases in demand for at-home exercise options. As gyms have reopened and other outside-the-home exercise options have become more available due to COVID vaccinations being more widespread and other COVID-related restrictions abating, demand for Peloton's equipment and subscription services have declined substantially. As a result, Defendants' statements about Peloton's ability to maintain its COVID-era financial success and growth were materially false and misleading and/or lacked a reasonable basis.

38.     In addition, Defendants made materially false and misleading statements and omissions during the Class Period regarding Peloton's inventory and the ostensible customer demand that the Company's inventory levels reflected.

39.     On February 4, 2021, Peloton filed a Form 8-K with the SEC, signed by Defendant Woodworth, that attached a Letter to Shareholders in connection with the Company's fiscal year 2021 second quarter financial report. The letter stated that "our supply chain investments over the last several months are helping us better match our supply and demand going forward."

40.     Also on February 4, 2021, during Peloton's earnings call with investors, Defendant Woodworth represented that "[i]n the second half of fiscal 2021, we expect quarterly sequential revenue growth as we bring down our delivery backlog, build adequate inventory as a result of our shipping and manufacturing investments and resume marketing spend."

41.     During the February 11, 2021 Goldman Sachs Technology & Internet Virtual Conference, Defendant Foley stated that "the demand has been through the roof and we have largely scaled or more than scaled our supply chain capacity from a manufacturing perspective to keep up with it."

42.     Moreover, on February 5, 2021, in Peloton's fiscal year 2021 second quarter Form 10-Q, Defendants reported $522.8 million of inventory, $495.3 million of which was in the form of finished products.  On May 7, 2021, in Peloton's fiscal year 2021 third quarter Form 10-Q, Defendants reported $614.2 million of inventory, $557.1 million of which was in the form of finished products.  And in each of those filings, Defendants Foley and Woodworth certified as to the effectiveness of Peloton's internal controls over financial reporting.

43.     The statements set forth above in paragraphs 39-42 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Defendants' statements represented specific inventory amounts on hand, and that those inventory levels aligned with and reflected customer demand.  In truth, however, and as the Company admitted, Peloton had a material weakness in its internal controls over financial reporting that left Defendants unable to accurately ascertain inventory levels.  Defendants accordingly were unable to align supply and demand, and by the end of the Class Period, Peloton had a massive growth in inventory that far exceeded customer demand.  As a result, Defendants' statements about Peloton's inventory, and

what inventory levels reflected regarding demand, were materially false and misleading and/or lacked a reasonable basis.

## THE TRUTH EMERGES

44.    On August 26, 2021, after the market closed, Peloton filed a Form 8-K with the SEC, signed by Defendant Woodworth, that attached a Letter to Shareholders in connection with the Company's fiscal year 2021 fourth quarter and full year financial report.  That letter disclosed that that "in the course of our fiscal 2021 audit process, a material weakness was identified in our internal controls over financial reporting with respect to identification and valuation of inventory."

45.    The Company's subsequent Annual Report for fourth quarter and fiscal year 2021, filed with the SEC on Form 10-K on August 27 and signed by each of the Individual Defendants, included additional information about the material weakness in the Company's internal controls over financial reporting.  Specifically, Defendants disclosed that:

*We have identified a material weakness in our internal control over financial reporting, and if our remediation of such material weakness is not effective, or if we fail to develop and maintain an effective system of disclosure controls and internal control over financial reporting, our ability to produce timely and accurate financial statements or comply with applicable laws and regulations could be impaired.*

In the course of preparing our financial statements for fiscal 2021, we identified a material weakness in our internal control over financial reporting. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis. The material weakness identified related to reporting involving inventory. We have concluded that this material weakness arose because our controls were not effectively designed, documented and maintained to verify that our physical inventory counts were correctly counted and communicated for reporting in our financial statements.

To address our material weakness, we are evaluating our program and controls to automate inventory count and reporting, implementing a global inventory count policy and standard operating procedures, training on these standard operating procedures and implementing enhanced document review for validating the accuracy of key reports used in the inventory process. We will not be able to fully

remediate this material weakness until these steps have been completed and have been operating effectively for a sufficient period of time. . . .

If we are unable to further implement and maintain effective internal control over financial reporting or disclosure controls and procedures, our ability to record, process and report financial information accurately, and to prepare financial statements within required time periods could be adversely affected, which could subject us to litigation or investigations requiring management resources and payment of legal and other expenses, negatively affect investor confidence in our financial statements and adversely impact our stock price. If we are unable to assert that our internal control over financial reporting is effective, or if our independent registered public accounting firm is unable to express an unqualified opinion as to the effectiveness of our internal control over financial reporting, investors may lose confidence in the accuracy and completeness of our financial reports, the market price of our Class A common stock could be adversely affected and we could become subject to litigation or investigations by the stock exchange on which our securities are listed, the SEC or other regulatory authorities, which could require additional financial and management resources.

Furthermore, we cannot assure you that the measures we have taken to date, and actions we may take in the future, will be sufficient to remediate the control deficiencies that led to our material weakness in our internal control over financial reporting or that they will prevent or avoid potential future material weaknesses. Our current controls and any new controls that we develop may become inadequate because of changes in conditions in our business. Further, weaknesses in our disclosure controls and internal control over financial reporting may be discovered in the future. Any failure to develop or maintain effective controls or any difficulties encountered in their implementation or improvement could harm our operating results or cause us to fail to meet our reporting obligations and may result in a restatement of our financial statements for prior periods.

Any failure to implement and maintain effective internal control over financial reporting could adversely affect the results of periodic management evaluations and annual independent registered public accounting firm attestation reports regarding the effectiveness of our internal control over financial reporting that we are required to include in our periodic reports that are filed with the SEC. Ineffective disclosure controls and procedures and internal control over financial reporting could also cause investors to lose confidence in our reported financial and other information, which would likely have a negative effect on the trading price of our Class A common stock. In addition, if we are unable to continue to meet these requirements, we may not be able to remain listed on the Nasdaq Global Select Market.

46.     The August 27, 2021 Form 10-K further disclosed that "as a result of this material weakness, management has concluded that our internal control over financial reporting was not effective as of June 30, 2021," and stated that the Company had taken the following remedial

measures:

- Evaluating the effectiveness of our current cycle count program and controls, including IT general controls over systems facilitating cycle counts, to automate inventory count and reporting.

- Implementing a global inventory count policy and standard operating procedures to ensure consistent communication of the inventory count process and adherence to these policies at facilities managed by us and third party logistics service providers.

- Providing training of standard operating procedures and internal controls to key stakeholders within the supply chain, logistics, and inventory processes.

- Implementing enhanced documentation associated with management review controls and validation of the completeness and accuracy of key reports used across the inventory process.

47.    As a result of these disclosures, the price of Peloton common stock declined by $9.75, or 8.5%, from a closing price of $114.09 per share on August 26, 2021 to a closing price of $104.34 per share on August 27, 2021.

48.    Defendants, however, continued to misrepresent and conceal the unsustainable nature of Peloton's financial results and growth post-COVID.  In the Company's August 26, 2021 Form 8-K and attendant earnings call, and in the August 27, 2021 Form 10-K, Peloton made false, reassuring statements to investors, including issuing guidance of $5.4 billion of total revenue for fiscal year 2022 (beginning September 1, 2021), representing 34% year-over-year growth.  During the August 26 earnings call, discussing that guidance, Defendant Woodworth claimed that "we are entering fiscal 2022 with a normalized backlog for our Bike portfolio and guidance reflects our expectation of continued strong demand."  In response to an analyst's question about demand for the Peloton Bike line, Defendant Foley represented that "the demand for Bike + and Bike is robust, and we feel good about the entire year's forecast."  Further, Defendant Lynch represented that Peloton's growing inventory was aligned with customer demand, stating, "everything in the supply chain from inventory that you're noting, the accumulation up on the balance sheet, to warehousing

and how we've expanded our warehouse footprint, to our delivery infrastructures, people, vans, our last-mile facilities, all that we're staging for what will be our biggest holiday ever. . . . we're in a really good position to execute this plan this year."

49.    On September 22, 2021, Defendants Foley and Woodworth participated in a question-and-answer session with a Goldman Sachs analyst during the Goldman Sachs Communacopia Conference.  In response to a question about how Peloton was "positioned as we exit calendar 2021 into calendar 2022," Foley stated, in relevant part, that "we see the opportunity in fitness as so huge in the US and abroad, as you think about the failure of fitness for decades of the gyms didn't really work, the gyms don't feel like they're going to work moving forward, and we can talk about that if you want to, home fitness was never a great category, you had some content and some hardware, but never had an integrated experience that really was engaging and immersive. . . . So, we think that the future of fitness is in the home. . . . we think 2022 is going to be a fantastic year."

50.    Then, on November 4, 2021, after the market closed, Peloton announced its financial results for its fiscal year 2022 first quarter, and disclosed that it had revised its full year revenue guidance down to a range of $4.4 to $4.8 billion dollars due to declining demand as its customers were increasingly free to exercise outside the home.  And regarding inventory, Peloton disclosed that inventory had skyrocketed to $1.27 billion, a 35% increase over the prior quarter, 91% of which were "finished products" that the Company still held.

51.    During the Company's November 4, 2021 earnings call, Defendant Foley admitted that Defendants knew "modeling the exit from COVID and the massive growth we saw in fiscal 2021 would be a challenging task," and Peloton's "visibility into our future performance" was "limited."  Defendant Woodworth likewise admitted that "the overall consumer and logistics

environments have been challenging to predict coming out of COVID."

52.     As a result of these disclosures, Peloton's stock price declined by $30.42 per share, or over 35%, from a closing price of $86.06 per share on November 4, 2021, to a closing price of $43.68 per share on November 5, 2021.

## LOSS CAUSATION

53.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Peloton common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when the truth concealed by Defendants' prior misrepresentations and omissions was disclosed to the market, including after the close of the market on August 26, 2021 and November 4, 2021, the price of Peloton common stock fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their acquisition of Peloton common stock during the Class Period—and Defendants' material misstatements and omissions— Plaintiff and other member of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Peloton common stock during the Class Period.  Excluded from the Class are Defendants and their families, directors and officers of Peloton and their families and affiliates.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims as a class action will provide substantial benefits to the parties and the Court.  As of the date of this Complaint, Peloton had approximately 300 million shares of common stock outstanding, owned by hundreds or thousands of investors.

56.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Peloton's common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

57.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

58.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

60.     Peloton's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

61.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Peloton who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made, nor were any of the projections or forecasts made by Defendant expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

62.     At all relevant times, the market for Peloton's common stock was an efficient market for the following reasons, among others:

(a)     Peloton's common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     Peloton filed periodic public reports with the SEC and NASDAQ;

(c)     Peloton regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Peloton was followed by several securities analysts employed by numerous major brokerage firms, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

63.     As a result of the foregoing, the market for Peloton's common stock promptly digested current information regarding Peloton from all publicly available sources and reflected such information in the price of Peloton's common stock.   Under these circumstances, all purchasers of Peloton common stock during the Class Period suffered similar injury through their purchase of Peloton common stock at artificially inflated prices and the presumption of reliance applies.

64.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose the true, material, negative financial impact facing the Company as the COVID pandemic began to abate, as well as Peloton's true inventory levels and their relationship with customer demand—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the sustainability of Peloton's financial results and growth post-COVID and the Company's inventory levels, and the impact that could have on the Company's near-term and long-term financial condition, that requirement is satisfied here.

**CAUSES OF ACTION**

**COUNT I**

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5
Against All Defendants**

65.     Plaintiff repeats, incorporates, and realleges every allegation above as if fully set forth herein.

66.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and other Class Members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Peloton common stock at artificially inflated prices.

67.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Peloton common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

69.     During the Class Period, Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading.

70.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Peloton's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

71.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Peloton's common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Peloton common stock had been artificially inflated by Defendants' fraudulent course of conduct.

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

73.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants**

74.     Plaintiff repeats, incorporates, and realleges every allegation above as if fully alleged in this count.

75.     The Individual Defendants acted as controlling persons of Peloton within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual

performance, and their power to control public statements about Peloton, the Individual Defendants had the power and ability to control the actions of Peloton and its employees.  By reason of this conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 18, 2021

/s/ Hannah Ross

Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Hialeah Employees' Retirement System*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
 & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33315
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of Hialeah Employees' Retirement System*

## CERTIFICATION PURSUANT TO
## <u>THE FEDERAL SECURITIES LAWS</u>

I, Robert Williams III, on behalf of City of Hialeah Employees' Retirement System ("Hialeah ERS"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hialeah ERS. I have reviewed the complaint with the Fund's legal counsel. Based on the legal counsel's knowledge and advice, Hialeah ERS has authorized the filing of the complaint.

2. Hialeah ERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hialeah ERS is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hialeah ERS's transactions in the Peloton Interactive, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hialeah ERS has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Vandevar v. American Renal Associates Holdings, Inc.,* No. 19-cv-9074 (D.N.J.)

6. Hialeah ERS has sought to serve as a representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *City of Hialeah Emp. Ret. Sys. v. Grand Canyon Education, Inc.,* No. 20-cv-639 (D. Del.)

7. Hialeah ERS will not accept any payment for serving as a representative party on behalf of the Class beyond Hialeah ERS's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this _16_ day of November, 2021.

Robert Williams III
Chairman of the Retirement Board
*City of Hialeah Employees' Retirement System*

**City of Hialeah Employees' Retirement System**
**Transactions in Peloton Interactive, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 12/18/2020 | 540 | 139.8400 |
| Purchase | 6/25/2021 | 2,140 | 121.4900 |
| Purchase | 7/27/2021 | 40 | 121.9938 |
| | | | |
| Sale | 12/10/2020 | (100) | 118.5000 |
| Sale | 10/19/2021 | (100) | 88.1900 |