UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>Defendants. | Case No. 1:21-cv-09582-ALC<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LE TANG FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| ANASTASIA DEULINA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>Defendants. | Case No. 1:21-cv-10266-ALC |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 6

    I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
         ALL PURPOSES ............................................................................................ 6

    II.    TANG SHOULD BE APPOINTED LEAD PLAINTIFF ..................................... 7

         A.    Tang Is Willing to Serve as Class Representative ..................................... 8

         B.    Tang Has the "Largest Financial Interest" in the Related Actions ............. 8

         C.    Tang Otherwise Satisfies the Requirements of Rule 23 ............................ 9

         D.    Tang Will Fairly and Adequately Represent the Interests of the
             Class and Is Not Subject to Unique Defenses........................................... 12

    III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
         BE APPROVED ............................................................................................ 12

CONCLUSION........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ..................................10

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) .........................................................................................7

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (2d Cir. 1992) ...........................................................................................10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................................6

*Chahal v. Credit Suisse Grp. AG*,
  No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)...........................9

*Dookeran v. Xunlei Ltd.*,
  No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .....................................11

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................9, 13

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)................................................................................................10

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...............................6, 7

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ...........................................................................................13

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................9

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ..................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...........................................................................................10

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ...................................................................................6

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................10

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)......................................................................................6

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ...............................................................................13

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)....................................8, 9

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)........................................................................................6

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).......................................................................13

**Statutes**

15 U.S.C. § 78u-4 ............................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 23.................................................................................. *passim*

Fed. R. Civ. P. 42.................................................................................1, 6

Le Tang ("Tang") respectfully submits this memorandum of law in support of her motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Tang as Lead Plaintiff on behalf of all persons or entities that purchased or otherwise acquired Peloton Interactive, Inc.'s ("Peloton" or the "Company") common stock between December 9, 2020 and November 4, 2021, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Peloton investors, including Tang, incurred significant losses following the disclosure of the Company's alleged fraud, which caused Peloton's stock price to fall sharply, damaging Tang and other Peloton investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with her purchases of Peloton common stock during the Class

1

Period, Tang incurred losses of approximately $900,673.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.  Accordingly, Tang believes that she has the largest financial interest in the relief sought in the Related Actions.

Beyond her considerable financial interest, Tang also meets the applicable requirements of Rule 23 because her claims are typical of absent Class members and because she will fairly and adequately represent the interests of the Class.

To fulfill her obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Tang has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Tang respectfully requests that the Court enter an order consolidating the Related Actions, appointing her as Lead Plaintiff for the Class, and approving her selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the first-filed of the Related Actions, based in New York City, Peloton is a fitness-equipment and media company.  During the Class Period, Peloton sold internet-connected stationary bicycles and treadmills that were designed and marketed for use in customers' homes.  The bicycles and treadmills include connected touchscreen devices through which customers can access exercise classes and other content.  To that end, in addition to the exercise equipment, Peloton sells monthly subscription services that allow customers to access fitness classes using their Peloton equipment, or alternatively to access classes and related content on their own devices, without using Peloton equipment.

For most of 2020 and 2021, as the COVID-19 pandemic and related stay-at-home orders and business closures largely kept individuals out of the gym, the demand for in-home exercise options increased dramatically.  Against that backdrop, in the months leading up to the Class Period, Peloton experienced unprecedented demand for its products and services.  As Defendant John Foley ("Foley") confirmed in statements to investors on February 11, 2021, "there's been crazy demand for our products because gyms have been closed or you didn't want to go to the gym because you might get COVID there. So, the demand has been through the roof . . . ."

Throughout the Class Period, investors were highly focused on whether Peloton's growth would decline once vaccines were approved, businesses reopened, and individuals could return to exercising at the gym.  Defendants repeatedly, falsely assured investors that Peloton's recent success was not primarily due to COVID-related increased demand, but rather that the Company's growth and financial results were sustainable and would continue post-COVID.  For example, on December 9, 2020, the first day of the Class Period, in response to an investor's question about "how a post-COVID world impacts [Peloton's] view of [its] business opportunity," Defendant Foley assured investors that Peloton's results "ha[ve] nothing to do with COVID. That is a human need of I want to get fit, I want fitness in my life in a consistent way; . . . I want it to be convenient, I want it to be fun, I want it to be motivating, and I want it to be a great value. And all of those things are foundational to what Peloton delivers, always delivered it. We delivered it in pre-COVID, during COVID, and we will deliver it post-COVID."

Defendants also represented to investors during the Class Period that investments in the Company's supply chain, including increasing the number of bikes and treadmills produced and reducing the average time it takes to deliver products to customers, were sound investments that would enable Peloton to align supply and demand for its products.  For example, on February 4,

3

2021, in a letter to Peloton shareholders, the Company stated that "our supply chain investments over the last several months are helping us better match our supply and demand going forward." Accordingly, Defendants represented that the rising inventory levels reported in the Company's periodic financial reports filed with the U.S. Securities and Exchange Commission ("SEC") during the Class Period reflected outstanding demand, including orders that had not yet been filled, rather than excess supply that outpaced waning demand.

Defendants' Class Period representations that Peloton would continue to succeed and grow post-COVID, were false. In truth, Peloton's Class Period financial results were primarily driven by COVID-related increases in demand for at-home exercise options. As gyms have reopened and other outside-the-home exercise options have become more available due to COVID vaccinations being more widespread and other COVID-related restrictions abating, demand for Peloton's equipment and subscription services have declined substantially.

Moreover, rather than matching supply and demand, Peloton had a massive growth in inventory that far exceeded customer demand. Further, the Company has admitted that it suffered from a material weakness in its internal control over financial reporting during the Class Period, specifically concerning inventory levels. In light of that material weakness, the Company could not accurately report its inventory levels, and had no sound basis to represent to investors that supply and demand were aligned.

The truth began to emerge on August 26, 2021, after the market closed, when Peloton disclosed, one day in advance of its announcement of the Company's financial results for its fiscal year 2021, that "in the course of our fiscal 2021 audit process, a material weakness was identified in our internal controls over financial reporting with respect to identification and valuation of inventory." In the Company's Annual Report for its fiscal year 2021, filed with the

4

SEC on Form10-K on August 27, it further disclosed that "this material weakness arose because our controls were not effectively designed, documented and maintained to verify that our physical inventory counts were correctly counted and communicated for reporting in our financial statements."

As a result of these disclosures, the price of Peloton common stock declined by $9.75 per share, or 8.5%, from a closing price of $114.09 per share on August 26, 2021 to a closing price of $104.34 per share on August 27, 2021.

At the same time, however, Peloton made false, reassuring statements to investors, including issuing guidance of $5.4 billion of total revenue for fiscal year 2022 (beginning September 1, 2021), representing 34% year-over-year growth.  Discussing that guidance, Defendant Jill Woodworth claimed that "we are entering fiscal 2022 with a normalized backlog for our Bike portfolio and guidance reflects our expectation of continued strong demand."

Then, on November 4, 2021, after the market closed, Peloton shocked investors when it disclosed that it had revised its full year revenue guidance down to a range of $4.4 to $4.8 billion due to declining demand as its customers were increasingly free to exercise outside the home. And regarding inventory, Peloton disclosed that inventory totaled $1.27 billion, a 35% increase over the prior quarter, 91% of which were "finished products" that the Company still held.

As a result of these disclosures, the price of Peloton common stock declined by $30.42 per share, or 35%, from a closing price of $86.06 per share on November 4, 2021 to $55.64 per share on November 5, 2021, erasing $8.1 billion in shareholder value.

As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's shares, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

5

ARGUMENT

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the Company, as well as certain officers or directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Peloton's

6

common stock and subsequently damaged the Class when the Company's share price plummeted as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    TANG SHOULD BE APPOINTED LEAD PLAINTIFF

Tang should be appointed Lead Plaintiff because, to her knowledge, she has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

7

As set forth below, Tang satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      Tang Is Willing to Serve as Class Representative

On November 18, 2021, counsel for the plaintiff in the first-filed of the Related Actions caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities fraud class action had been filed against Defendants, and which advised investors in Peloton securities that they had until January 18, 2022 to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. B.

Tang has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that she is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Tang satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Tang Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of her knowledge, Tang has the largest financial interest of any Peloton investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6,

8

1997).    In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Tang: (1) purchased 12,600 shares of Peloton common stock; (2) expended $1,423,879 on her purchases of Peloton common stock; (3) retained all of her shares of Peloton common stock; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $900,673 in connection with her Class Period purchases of Peloton common stock. *See* Lieberman Decl., Ex. A.  To the extent that Tang possesses the largest financial interest in the outcome of this litigation, she is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    Tang Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[1] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Tang.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Tang's claims are typical of those of the Class.  Tang alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Peloton.  Tang, as did all Class members, purchased Peloton common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Peloton's stock price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Tang has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submits her choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Tang is also represented by the Schall Law Firm and Labaton Sucharow LLP in this litigation.  There is no evidence of antagonism or conflict between the interests of Tang and the interests of the Class.  Moreover, Tang has submitted a signed Certification declaring her commitment to protect the interests of the Class (*see*

11

Lieberman Decl., Ex. C), and the significant losses incurred by Tang demonstrate that she has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating her adequacy, Tang has submitted a Declaration attesting to, *inter alia*, her background, her investing experience, her understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, her decision to seek appointment as Lead Plaintiff, and the steps that she is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

> D.  Tang Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Tang as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)  will not fairly and adequately protect the interests of the class; or

> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Tang to fairly and adequately represent the Class has been discussed above. Tang is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class. Accordingly, Tang should be appointed Lead Plaintiff for the Class.

## III.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Tang has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80-plus year history, as detailed in its firm resume. *See* Lieberman Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.* As a result of its extensive experience in similar litigation, Tang's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Tang's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Tang respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

CONCLUSION

For the foregoing reasons, Tang respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Tang as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  January 18, 2022

Respectfully submitted,

POMERANTZ LLP

/s/ Jeremy A. Lieberman
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Le Tang and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Le Tang*

LABATON SUCHAROW LLP
David J. Schwartz
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
dschwartz@labaton.com

*Additional Counsel for Le Tang*

14