UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>　　　　Defendants. | Case No. 1:21-cv-09582-ALC<br><br>CLASS ACTION |
| ANASTASIA DEULINA, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>　　　　Defendants. | Case No. 1:21-cv-10266-ALC |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
SJUNDE AP-FONDEN AND INDIANA PUBLIC RETIREMENT SYSTEM
FOR APPOINTMENT AS LEAD PLAINTIFF,
APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND
CONSOLIDATION OF RELATED ACTIONS**

# **TABLE OF CONTENTS**

                                      **Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF THE ACTION ................................................................................................ 3

ARGUMENT .............................................................................................................................. 5

    A.    AP7 and Indiana Are the Most Adequate Plaintiff ................................................ 5

        1.    AP7's and Indiana's Motion Is Timely ....................................................... 6

        2.    AP7 and Indiana Have the Largest Financial Interest in the Relief
            Sought by the Class ..................................................................................... 6

        3.    AP7 and Indiana Satisfy the Requirements of Rule 23 ............................... 7

        4.    AP7 and Indiana Are Precisely the Type of Lead Plaintiff
            Envisioned by the PSLRA ........................................................................... 8

    B.    AP7 and Indiana Selected Well-Qualified Counsel to Represent the Class ......... 11

    C.    The Related Actions Should Be Consolidated ..................................................... 13

CONCLUSION ......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                          **PAGE(S)**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................8, 10

*Chung v. Eargo, Inc.*,
   No. 3:21-cv-08597-CRB, ECF No. 36 (N.D. Cal. Jan. 5, 2022) .............................................13

*Emps. Ret. Sys. Fund of the City of Fort Worth v. James River Grp. Holdings, Ltd.*,
   No. 3:21-cv-00444-MHL, ECF No. 20 (E.D. Va. Sept. 22, 2021) ..........................................13

*Faig v. BioScrip, Inc.*,
   2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ...........................................................................5

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ...............................................................................................8

*Hom v. Vale, S.A.*,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...........................................................................7, 8

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007),
   *on reconsideration in part sub nom. In re IMAX Sec. Litig.*,
   2009 WL 1905033 (S.D.N.Y. June 29, 2009) ...........................................................................13

*In re Mattel, Inc. Sec. Litig.*,
   2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ............................................................................13

*Mustafin v. GreenSky, Inc.*,
   2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ..........................................................................10

*In re Myriad Genetics, Inc. Sec. Litig.*,
   2021 WL 5882259 (D. Utah Dec. 13, 2021) ............................................................................13

*Reimer v. Ambac Fin. Grp., Inc.*,
   2008 WL 2073931 (S.D.N.Y. May 9, 2008) ............................................................................11

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ..........................................................................13

*Yoshiwawa v. Exxon Mobil Corp.*,
   No. 3:21-cv-001940N, ECF No. 43 (N.D. Tex. June 10, 2021) ..............................................13

**STATUTES**

15 U.S.C. § 78u-4 *et seq*. ................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ............................................................................................................. 7

Fed. R. Civ. P. 42(a) ............................................................................................................ 3, 13

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................. 8

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) ................................ 8

Sjunde AP-Fonden ("AP7") and Indiana Public Retirement System ("Indiana") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (1) appointing AP7 and Indiana as Lead Plaintiff; (2) approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; (3) consolidating the above-captioned related actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

On November 18, 2021, proposed Lead Counsel filed the first of the two above-captioned Related Actions (the "Initial Action") on behalf of the City of Hialeah Employees' Retirement System, alleging that Peloton Interactive, Inc. ("Peloton" or the "Company") and certain of its senior executives (collectively, "Defendants") violated the federal securities laws between December 9, 2020, and November 4, 2021, inclusive (the "Class Period"). Specifically, the Initial Action alleges that Defendants misrepresented Peloton's ability to continue to grow post-COVID, as well as the Company's internal controls over financial reporting with respect to its inventory. Peloton investors—including AP7 and Indiana—incurred significant losses when the Company disclosed that it had identified a material weakness in its internal controls over financial reporting with regards to inventory, and that Peloton had overestimated demand and underestimated the impact of gyms reopening as the pandemic subsided.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation,

and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, AP7 and Indiana are the "most adequate plaintiff" by virtue of, among other things, the approximately $9.7 million in losses, as calculated on a first-in, first-out ("FIFO") basis, and approximately $8.3 million in losses, as calculated on a last-in, first-out ("LIFO") basis, that they incurred on their purchases of over 117,000 shares of Peloton common stock during the Class Period.[1]

In addition to asserting the largest financial interest, AP7 and Indiana readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class and they will fairly and adequately represent the Class. AP7 and Indiana are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a real financial interest in the litigation, and have extensive experience supervising the work of outside counsel in securities litigation—including in groups with other institutional investors. Indeed, in their prior lead plaintiff service (including as members of lead plaintiff groups), AP7 and Indiana have recovered well over $500 million for investors in securities class actions prosecuted under the PSLRA (including more than $400 million in actions prosecuted by the proposed Lead Counsel here).

Further, as set forth in greater detail in their Joint Declaration submitted herewith, AP7 and Indiana fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous

---

[1] AP7's and Indiana's PSLRA-required Certifications are attached as Exhibit A to the Declaration of Hannah Ross in Support of the Motion of Sjunde AP-Fonden and Indiana Public Retirement System for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of Related Actions (the "Ross Decl."). In addition, charts providing calculations of AP7's and Indiana's losses are provided as Exhibit B to the Ross Decl. References to "Ex. __" are to the exhibits accompanying the Ross Decl. and all emphasis is added and citations omitted unless noted.

prosecution of the action.[2] AP7 and Indiana have already begun actively overseeing this litigation. Prior to seeking a role as Lead Plaintiff, representatives from AP7 and Indiana held a conference call to discuss, among other things, the merits of the claims against Defendants, instructions to their proposed Lead Counsel about the prosecution of the case, as well as AP7's and Indiana's common goals in the litigation. *See* Ex. C ¶ 11. AP7 and Indiana fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and have amply demonstrated their commitment and ability to fulfill those responsibilities here.

AP7's and Indiana's adequacy is further demonstrated through their selection of Kessler Topaz and Bernstein Litowitz, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, AP7 and Indiana respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Lead Counsel.[3]

## SUMMARY OF THE ACTION

Peloton is a fitness-equipment and media company that is incorporated in Delaware and has its principal place of business in New York, New York. During the Class Period, Peloton sold internet-connected stationary bicycles and treadmills that were primarily designed and marketed for use in customers' homes.

---

[2] *See* Joint Declaration of Richard Gröttheim and Jeffrey M. Gill in Support of the Motion of Sjunde AP-Fonden and Indiana Public Retirement System for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel (the "Joint Declaration"), Ex. C.

[3] On December 2, 2021, a related securities class action was filed in this District. *See Deulina v. Peloton Interactive, Inc.*, No. 1:21-cv-10266-ALC. Under Rule 42(a), consolidation is appropriate when the actions involve common questions of fact or law. *See* Fed. R. Civ. P. 42(a). Here, the Related Actions both assert claims under Sections 10(b) and 20(a) of the Exchange Act arising out of substantially similar alleged misstatements and omissions, against the same Defendants. As such, consolidation is appropriate under Rule 42(a).

For most of 2020 and 2021, the COVID-19 pandemic caused the demand for in-home exercise equipment to increase dramatically. Against that backdrop, in the months leading up to the Class Period, Peloton experienced unprecedented demand for its products and services. Throughout the Class Period, investors were highly focused on Peloton's growth, whether Peloton's growth would decline once vaccines were approved, businesses reopened, and individuals could return to exercising at the gym, and the Company's ability to manage inventory to meet that increased demand. The Related Actions allege that Defendants repeatedly, falsely assured investors that Peloton's recent success was not primarily due to COVID-related increased demand, but rather that the Company's growth and financial results were sustainable and would continue post-COVID. Defendants also represented to investors during the Class Period that investments in the Company's supply chain, including increasing the number of bikes and treadmills produced and reducing the average time it takes to deliver products to customers, were sound investments that would enable Peloton to align supply and demand for its products. As a result of these misrepresentations, Peloton shares traded at artificially inflated prices throughout the Class Period.

The truth about Peloton was revealed in a series of disclosures. First, after the market closed on August 26, 2021, the Company disclosed that it had identified a material weakness in its internal controls over financial reporting "with respect to identification and valuation of inventory." In its Annual Report filed with the SEC on Form 10-K on August 27, Peloton explained that "this material weakness arose because our controls were not effectively designed, documented, and maintained to verify that our physical inventory counts were correctly counted and communicated for reporting in our financial statements." As a result of these disclosures, the

price of Peloton common stock declined by $9.75 per share, or 8.5%, from a closing price of $114.09 per share on August 26, 2021 to a closing price of $104.34 per share on August 27, 2021.

However, at the same time that Peloton disclosed the weakness of its internal controls, Defendants continued to misrepresent demand for Peloton's product and potential growth as the COVID pandemic evolved, issuing guidance of $5.4 billion of total revenue for fiscal year 2022, representing 34% year-over-year growth.

Then, on November 4, 2021, the Company announced second quarter financial results that fell far short of expectations and reduced its total revenue guidance for fiscal 2022 by a staggering $1 billion. Peloton further disclosed that inventory had skyrocketed to $1.27 billion, 91% of which comprised "finished products" that the Company still held. On Peloton's November 4 earnings conference call with investors, Defendants admitted that Peloton overestimated demand and underestimated the impact of gyms reopening as the pandemic subsides. As a result of these disclosures, Peloton's share price declined by $30.42 per share, or 35%, from a closing price of $86.06 per share on November 4, 2021 to a closing price of $55.64 per share on November 5, 2021.

## ARGUMENT

### A. AP7 and Indiana Are the Most Adequate Plaintiff

AP7 and Indiana respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a presumption for selecting a lead plaintiff that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Faig v. BioScrip, Inc.*, 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19,

2013) (discussing qualifications for lead plaintiff presumption). As set forth below, AP7 and Indiana believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1. AP7's and Indiana's Motion Is Timely

The PSLRA allows members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On November 18, 2021, proposed co-Lead Counsel Bernstein Litowitz filed the Initial Action, *City of Hialeah Employees' Retirement System v. Peloton Interactive, Inc.*, No. 1:21-cv-9582-ALC, in this District. That same day, Bernstein Litowitz published a notice on *PR Newswire* alerting investors to the pendency of the Initial Action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is January 18, 2022. *See* Ex. D. AP7 and Indiana have timely moved for appointment as Lead Plaintiff through the filing of this motion.

### 2. AP7 and Indiana Have the Largest Financial Interest in the Relief Sought by the Class

AP7 and Indiana should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, AP7 and Indiana sustained losses of approximately $9.7 million as calculated on a FIFO basis and $8.3 million as calculated on a LIFO basis on their Class Period purchases of more than 117,000 shares of Peloton common stock. *See* Exs. A & B. To the best of AP7's and Indiana's knowledge, there is no other applicant seeking Lead Plaintiff appointment claiming a larger financial interest in the litigation. Accordingly, AP7 and Indiana have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.     AP7 and Indiana Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, AP7 and Indiana otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016). Here, AP7 and Indiana unquestionably satisfy both requirements.

AP7's and Indiana's claims are typical of the claims of other purchasers of Peloton common stock. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id*. Here, AP7, Indiana, and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, AP7 and Indiana: (1) purchased Peloton shares during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged as a result. *See id*. (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws"). As such, AP7 and Indiana satisfy the typicality requirement of Rule 23.

AP7 and Indiana likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case

to ensure vigorous advocacy." *Vale*, 2016 WL 880201, at *6. AP7 and Indiana satisfy these elements because their substantial financial stake in the litigation provides AP7 and Indiana with the ability and incentive to vigorously represent the Class's claims. AP7's and Indiana's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between AP7 and Indiana and other Class members.

### 4. AP7 and Indiana Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the typicality and adequacy prongs of Rule 23, AP7 and Indiana are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA— sophisticated institutional investors with a substantial financial interest in the litigation. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (citation omitted); S. Rep. No. 104-98, at *11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (1995) ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Based on their past experience successfully serving as lead plaintiffs, AP7 and Indiana are well-aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel, and AP7 and Indiana have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Exs. A & C; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y.

8

2009) ("Groups of plaintiffs are specifically permitted by the PSLRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

As set forth in their Joint Declaration, AP7 and Indiana are sophisticated institutional investors that have combined assets under management of approximately $146 billion with extensive experience and success serving as members of Lead Plaintiff groups under the PSLRA. Ex. C ¶¶ 2-5. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this litigation. *Id.* ¶¶ 7-16. Indeed, AP7's and Indiana's decision to join together to prosecute this litigation is informed by their experience successfully prosecuting similar securities class actions as co-lead plaintiffs under the PSLRA. For example, in *In re Luckin Coffee Inc. Securities Litigation*, No. 1:20-cv-01293-LJL (S.D.N.Y.), AP7, as co-lead plaintiff with another institutional investor, recently recovered $175 million (pending court approval), with Kessler Topaz and Bernstein Litowitz serving as co-lead counsel. Similarly, Indiana recently recovered $6.5 million for investors when it served as co-lead plaintiff in *In re SAIC, Inc. Securities Litigation*, No. 1:12-cv-01353 (S.D.N.Y.). Ex. C ¶¶ 3, 5.

Moreover, AP7 and Indiana have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. For example, as part of their effort to formalize their oversight of this litigation and before seeking appointment as Lead Plaintiff, representatives of AP7 and Indiana held a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the litigation, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the funds have and will take to ensure

that the Class's claims will be zealously and efficiently litigated. Ex. C ¶ 11. AP7 and Indiana have partnered with other institutional investors in many cases and are not aware of any instance of disagreement between co-lead plaintiffs that could not be resolved through discussion and collaboration among members of the group. *See id.* ¶ 14. To that end, AP7 and Indiana discussed with each other the importance of joint decision making, open communication, and the ability to confer, with or without counsel, on short notice in order to make timely decisions. *See id.* ¶ 13. In addition, AP7 and Indiana directed their proposed Lead Counsel to enter into a joint prosecution agreement that outlines their proposed Lead Counsel's respective responsibilities and ensures there will be no duplication of effort and that the claims of the Class are prosecuted vigorously yet efficiently and in a cost-effective manner, and which can be provided to the Court *in camera*. *See id.* ¶ 17. Further, while AP7 and Indiana appreciate that any attorneys' fees in this litigation, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and have executed retainer agreements that limit the fees counsel may request. *See id.* ¶ 18. Through these measures and others, AP7 and Indiana have sought to ensure the Class will receive the best possible representation.

In sum, AP7 and Indiana have demonstrated their willingness, resources, and experience and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. AP7 and Indiana are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA. *See, e.g.*, *Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over

10

the litigation and joint supervision of counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

### B. AP7 and Indiana Selected Well-Qualified Counsel to Represent the Class

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Court should approve AP7's and Indiana's selection here.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Ex. E (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including in *In re Tyco International, Ltd. Sec. Litig.*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery) and *Luther v. Countrywide Fin. Corp.*, No. 2:12-CV-05125 MRP (MANx) (C.D. Cal.) ($500 million recovery). Further, Kessler Topaz is currently serving as Lead Counsel in some of the most significant securities fraud class actions in this District, including *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.) (with AP7 serving as lead plaintiff), and *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (S.D.N.Y.) (with AP7 serving as lead plaintiff). Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Sec. Litig.*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

11

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Ex. F (Bernstein Litowitz's Firm Résumé). Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in this District—were obtained for the class. Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659 (S.D.N.Y.) (recovering $1.3 billion for investors), and *In re Bear Stearns Mortgage Pass-Through Litigation*, No. 1:08-cv-8093 (S.D.N.Y.) (recovering $500 million for investors). Moreover, on behalf of its client the City of Hialeah Employees' Retirement System, Bernstein Litowitz investigated and filed the complaint in the Initial Action.

Kessler Topaz and Bernstein Litowitz have a history of successfully prosecuting securities fraud class actions together. Kessler Topaz and Bernstein Litowitz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); *In re Luckin Coffee Inc. Securities Litigation*, No. 20-cv-1292 (S.D.N.Y.) ($175 million recovery with AP7 serving as co-lead plaintiff with other institutional investors, and Kessler Topaz and Bernstein Litowitz serving as co-lead counsel) (pending court approval); and

12

*In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with AP7 serving as co-lead plaintiff with other institutional investors, and Kessler Topaz and Bernstein Litowitz serving as co-lead counsel). Furthermore, Kessler Topaz and Bernstein Litowitz are currently serving together as co-lead counsel in *In re Kraft Securities Litigation*, No. 19-cv-1339 (N.D. Ill.) (with AP7 serving as a co-lead plaintiff with another institutional investor).[4]

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

### C. The Related Actions Should Be Consolidated

AP7 and Indiana respectfully request that the Related Actions against Peloton be consolidated pursuant to Rule 42(a). Rule 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). The Court has "broad discretion to determine whether to consolidate actions, and in making this determination, [it is] to consider whether judicial economy favors consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91

---

[4] AP7 and Indiana bring to the Court's attention an order issued by the United States District Court for the Northern District of California in an unrelated action where Bernstein Litowitz has been serving as lead counsel for lead plaintiff SEB Investment Management AB, and class counsel for the certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021) (Ex. G). Counsel for an unsuccessful lead plaintiff movant raised questions about Bernstein Litowitz's hiring of a former employee of the lead plaintiff. Following discovery and extensive briefing, the court allowed Bernstein Litowitz to continue as class counsel. *See id.* at *1-2. The court nevertheless ordered Bernstein Litowitz to bring the order to the attention of the court when seeking appointment as class counsel, and also to the decision maker for the proposed lead plaintiff who selects class counsel. *See id.* at *2. AP7 and Indiana are aware of the order, and affirm their selection of Bernstein Litowitz as proposed co-Lead Counsel. Importantly, courts have repeatedly approved Bernstein Litowitz as lead counsel in securities actions after being apprised of the *Symantec* order. *See* Order, *Yoshiwawa v. Exxon Mobil Corp.,* No. 3:21-cv-001940N, ECF No. 43 at 3 (N.D. Tex. June 10, 2021) (finding that "the requirements of Rule 23" were "satisf[ied],") (Ex. H); *see also* Order, *Emps. Ret. Sys. Fund of the City of Fort Worth v. James River Grp. Holdings, Ltd.,* No. 3:21-cv-00444-MHL, ECF No. 20 (E.D. Va. Sept. 22, 2021) (Ex. I); Stipulation and Order Appointing IBEW Local 353 Pension Plan and Xiaobin Cai as Lead Plaintiff, Approving Their Selection of Lead Counsel, and Consolidating Actions, *Chung v. Eargo, Inc.*, No. 3:21-cv-08597-CRB, ECF No. 36 (N.D. Cal. Jan. 5, 2022) (Ex. J). Bernstein Litowitz was also recently appointed class counsel in *In re Mattel, Inc. Securities Litigation*, 2021 WL 4704578, at *7 (C.D. Cal. Oct. 6, 2021), and *In re Myriad Genetics, Inc. Securities Litigation*, 2021 WL 5882259, at *13 (D. Utah Dec. 13, 2021), after those courts were informed of the *Symantec* order.

(S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Each of the plaintiffs in the Related Actions is an investor in Peloton and asserts claims concerning the same parties, transactions, and events. The actions present virtually identical factual and legal issues because they each assert claims under Section 10(b) and 20(a) under the Exchange Act against the same Defendants during the same Class Period, and are premised upon substantially similar alleged misstatements regarding the Company's post-COVID growth as well as the Company's internal controls over financial reporting regarding its inventory. Consolidation would promote the conservation of judicial resources by preventing the substantial duplication of labor that would result if the actions were heard by different judges.

Therefore, AP7 and Indiana respectfully request that the Court consolidate the Related Actions.

## CONCLUSION

For the reasons discussed above, AP7 and Indiana respectfully request that the Court: (1) appoint AP7 and Indiana as Lead Plaintiff; (2) approve their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the Class; (3) consolidate the Related Actions; (4) grant any such further relief as the Court may deem just and proper.

Dated:  January 18, 2022                                  Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

*/s/ Hannah Ross*
Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff Indiana Public Retirement System and Proposed Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Sjunde AP-Fonden and Proposed Lead Counsel for the Class*