# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBECO CAPITAL GROWTH FUNDS SICAV – ROBECO GLOBAL CONSUMER TRENDS and CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, <br><br>                  Plaintiffs, <br><br>        -v- <br><br> PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, JILL WOODWORTH, THOMAS CORTESE, MARIANA GARAVAGLIA, and HISAO KUSHI, <br><br>                  Defendants. | 21-CV-09582 (ALC) (OTW) <br><br> The Honorable Andrew L. Carter, Jr. <br><br> The Honorable Ona T. Wang <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW**</u>

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFFS FAIL TO PLEAD A MISREPRESENTATION CLAIM ............................1

    A.      Plaintiffs Do Not Allege an Actionable Misstatement or Omission........................1

    B.      Plaintiffs Do Not Allege a Strong Inference of Scienter .......................................7

III.    PLAINTIFFS FAIL TO PLEAD AN INSIDER-TRADING CLAIM .............................10

IV.     CONCLUSION...................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bldg. Trades Pens. Fund of W. Penn., v. Insperity, Inc.*,
  2022 WL 784017 (S.D.N.Y. Mar. 15, 2022) .............................................................................. 4

*City of N. Miami Beach Police Officers' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
  2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ............................................................................... 9

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) ........................................................................................ 9

*Gross v. AT&T*,
  2021 WL 9803956 (S.D.N.Y. 2021) .................................................................................. 2, 3, 4

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................................... 10

*In re Aratana Therap. Inc. Sec. Litig.*,
  315 F. Supp. 3d 737 (S.D.N.Y. 2018) ........................................................................................ 6

*In re Barrick Gold Corp. Sec. Litig.*,
  341 F. Supp. 3d 358 (S.D.N.Y. 2018) ........................................................................................ 6

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2018 WL 2382600 (S.D.N.Y. May 24, 2018) ........................................................................... 6

*In re FVC.COM Sec. Litig.*,
  136 F. Supp. 2d 1031 (N.D. Cal. 2000) ..................................................................................... 8

*In re Schol. Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ......................................................................................................... 7

*In re Tarragon Corp. Sec. Litig.*,
  2009 WL 10732259 (S.D.N.Y. Mar. 27, 2009) ......................................................................... 4

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ........................................................................................ 5

*Johnson v. NYFIX, Inc.*,
  399 F. Supp. 2d 105 (D. Conn. 2005) ........................................................................................ 8

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ....................................................................................................... 9

*Koplyay v. Cirrus Logic, Inc.*,
2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013) ................................................................ 8

*Lipton v. Pathogen. Corp.*,
284 F.3d 1027 (9th Cir. 2002) ................................................................................... 8

*Liu v. Intercept Pharms., Inc.*,
2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ........................................................... 4

*Nguyen v. New Link Genetics Corp.*,
297 F. Supp. 3d 472 (S.D.N.Y. 2018).......................................................................... 7

*Okla. Firefighters Pens. and Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018).......................................................................... 4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Pens. Fund*,
575 U.S. 175 (2015)...................................................................................................... 6

*Reiner v. Teladoc Health, Inc.*,
2021 WL 4451407 (S.D.N.Y. Sept. 8, 2021)............................................................... 8

*SEC v. McCaskey*,
2002 WL 850001 (S.D.N.Y. Mar. 26, 2002) ............................................................ 10

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010); *infra*, II.B ................................................................... 6

*Weston v. DocuSign, Inc.*, 2023 WL 3000583 (N.D. Cal. Apr. 18, 2023)..................................... 2

*Wilbush v. Ambac Fin. Grp. Inc.*,
271 F. Supp. 3d 473 (S.D.N.Y. 2017)............................................................... 5, 6, 7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ................................................................................... 10

**RULES**

17 CFR 240.10b5-1................................................................................................ 1, 8, 10

**GLOSSARY**

The following terms are used in this Reply:

| **Term** | **Definition** |
|---|---|
| AC: | Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law, filed June 25, 2022, Dkt. 51 |
| Appendix A or App. A: | Appendix A hereto, listing in tabular format statements challenged by Plaintiffs in their Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law |
| Challenged Statements: | Statements Plaintiffs allege to be false or misleading, SAC ¶¶ 153 - 218, and as set forth in Appendix A |
| Class Period: | February 5, 2021 through and including January 19, 2022 |
| CW(s): | Confidential Witness(es), as identified in the SAC |
| Defendants: | Peloton, Speaker Defendants, and Non-Speaker Defendants |
| Exchange Act: | The Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* |
| Ex(s). Or Exhibit(s): | Exhibits attached to the Declaration of Whitney B. Weber, filed concurrently, which are public filings and statements that are incorporated into the SAC and/or subject to judicial notice |
| FY19, FY20, FY21, or FY22: | Fiscal years, starting with fiscal year 2019 through fiscal year 2022 |
| Inside Sales: | One of at least three sales channels through which Peloton sold products |
| MNPI: | Material nonpublic information |
| Non-Speaker Defendants: | Hisao Kushi (Peloton Chief Legal Officer during Class Period), Mariana Garavaglia (Peloton Chief People Officer then COO during Class Period), Thomas Cortese (Peloton COO then Chief Product Officer during Class Period) |
| Opposition or Opp.: | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, Dkt. No. 98 |
| Order or Ord.: | Court's Order and Opinion dismissing the AC, dated March 30, 2023, Dkt. No. 88 |
| OTD: | Order to delivery window, which represents the time between a customer ordering a Peloton product and receiving that product |
| Peloton or Company: | Peloton Interactive, Inc. |
| Plaintiffs: | Lead Plaintiff Robeco Capital Growth Funds SICAV – Robeco Global Consumer Trends (individually, "Plaintiff Robeco") and Plaintiff City of Hialeah Employees' Retirement System |

iv

| Term | Definition |
|---|---|
| | (individually, "Plaintiff Hialeah") |
| PSLRA: | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, 77l, 77z–1, 77z–2, 78a, 78j–1, 78t, 78u, 78u–4, 78u–5 |
| Q1, Q2, Q3, or Q4: | Quarterly periods, starting with the first quarter of a fiscal year through the fourth quarter of the fiscal year.  Peloton's fiscal year begins on July 1 of the prior calendar year; *i.e.*, FY21 began July 1, 2020 and FY22 began July 1, 2021 |
| QoQ: | Quarter-over-quarter |
| SAC or Complaint: | Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law, filed May 6, 2023, Dkt. No. 92 |
| Speaker Defendants: | John Foley (Peloton CEO during the Class Period), William Lynch (Peloton President during the Class Period), Jill Woodworth (Peloton CFO during the Class Period) |
| YoY: | Year-over-year |
| 4Q20, 1Q21, 2Q21, 3Q21, 4Q21, 1Q22, or 2Q22: | Quarterly periods, starting with the fourth quarter of fiscal year 2020 through the second quarter of fiscal year 2022 |

## I.    INTRODUCTION

Plaintiffs' Opposition recycles the same arguments the Court already rejected when it dismissed the AC.  As before, Plaintiffs' core theory is that Peloton purportedly failed to disclose that "demand" for its products "began to decline rapidly" in "December 2020."  Opp. at 1.  But Plaintiffs continue to ignore the Court's Order (and Peloton's statements), which described *how* Peloton actually performed (it "exceeded its sales guidance throughout the Class Period," Ord. at 23) and *what* Peloton actually said ("Defendants explicitly told the public that demand for Peloton's products would be returning to pre-COVID levels," *id.* at 24).  In fact, Plaintiffs discuss the Court's Order just *once*, and only to claim they "addressed" it by citing "new" allegations from low-level CWs.  Opp. at 2.  But as before, none of the CWs addresses Peloton's actual sales or public disclosures—if anything, the CWs' allegations contradict *each other*, not the Challenged Statements.  The Opposition also cuts-and-pastes other arguments that the Court rejected when it dismissed many of the Challenged Statements in the AC as not actionable.  The SAC should also be dismissed because Plaintiffs do not plead a strong inference of scienter, and their insider-trading claims fail, as Defendants' trades were made under earlier-adopted Rule 10b5-1 plans.

## II.    PLAINTIFFS FAIL TO PLEAD A MISREPRESENTATION CLAIM

### A.    <u>Plaintiffs Do Not Allege an Actionable Misstatement or Omission</u>

***The Statements Were True***.  Plaintiffs continue to argue Peloton lied about the "current demand" for its products and "assure[d]" investors "COVID-level demand for Bikes and Treads had continued."  Opp. at 1, 6-7.  But Plaintiffs' theory is "not borne out by the totality of the facts alleged."  Ord. at 24.  Indeed, Plaintiffs ignore both Peloton's disclosures and the Court's decision rejecting this exact argument, including that:

- Peloton told investors that product "demand" was reflected in its sales guidance (*see, e.g.*, SAC ¶¶ 155, 167);

1

- Guidance projected QoQ sales *declines* during the Class Period, as Defendants "told investors sales were 'tapering from COVID highs'" and to expect a "return to historical seasonal sales trends" with "lower demand in the summer" (Ord. at 24; Mot. at 11);

- Peloton met or exceeded its guidance every quarter of the Class Period—achieving YoY *growth* each quarter (Ord. at 23-24; Mot. at 9); and

- Peloton "specifically compared demand in Peloton's products with *pre*-COVID levels," not the COVID-era peaks (Ord. at 24-25; *see also, e.g.*, SAC ¶ 177).

In other words, Peloton did *not* promise "that the unprecedented demand that Peloton had seen during COVID closures would remain at the same level." Ord. at 24-25; SAC ¶¶ 155, 167, 177.

The SAC should be dismissed on this ground alone, and Plaintiffs' cited authority, *Weston v. DocuSign, Inc.*, 2023 WL 3000583 (N.D. Cal. Apr. 18, 2023), supports dismissal. In *DocuSign*, defendants repeatedly stated that demand for DocuSign's e-signature products "*will persist* beyond the crisis," would "*be sustained* even after" COVID, and "*will hold* when the pandemic subsides." *Id*. at *14. Demand "wane[d]," and the company missed its sales guidance. *Id*. at *7. Here, by contrast, "rather than promising that the unprecedented demand that Peloton had seen during COVID closures would remain at the same level," Defendants told investors "that the rapid increase in demand for Peloton's products could *not* be sustained at COVID levels"—then met guidance. Ord. at 24-25 (emphasis added); *see also* SAC ¶ 177 (COVID was "an *anomaly* last year in terms of sales"). Plaintiffs again ignore these disclosures entirely, and instead claim "new facts" from "24 new" CWs support falsity. Opp. at 2, 6-10. "But the allegations attributed to the additional [CWs] are not qualitatively different than those the Court found to be insufficient" in the AC—and none renders the Challenged Statements false. *Gross v. AT&T*, 2021 WL 9803956, at *6 (S.D.N.Y. 2021) (dismissing "kitchen sink" approach that added 52 new CWs to complaint).

For instance, Plaintiffs point to more former sales reps who allegedly missed sales quotas. Opp. at 7-8. But these allegations "only serve to reaffirm" the same argument Plaintiffs made (and the Court rejected) last time. *Gross*, 2021 WL 9803956, at *6. Peloton did not disclose sales

2

*quotas*, it announced sales *guidance*. Mot. at 10. Indeed, Plaintiffs' allegation that the quotas "form the basis of [Peloton's] revenue guidance," SAC ¶ 118, only confirms that Defendants' statements were true, as Peloton met guidance each quarter with YoY growth. Mot. at 10. In any event, Plaintiffs' contention that "11 former sales representatives" missed their quotas (Opp. at n.5) says nothing about demand for Peloton's products overall: Peloton sold a majority of its products online, not through low-level sales reps. Ex. 2; Mot. at 9-10; *Gross*, 2021 WL 9803956, n.15 ("store manager[s]" and "sales associate[s]" do not have "companywide perspective").

Plaintiffs also point to CW allegations that demand began to "decline rapidly" in "December 2020." Opp. at 1. But Plaintiffs concede Peloton experienced a product-demand "boon" into 2021. SAC ¶ 110. Indeed, one CW claims Peloton achieved "record" sales through *June* 2021. Opp. at 6. Plaintiffs' argument also conflicts with Peloton's actual results: in 3Q21 (January-March) Peloton had record sales, beating its forecast. Ord. at 23-24. Peloton also achieved its Class Period sales guidance with YoY growth *every quarter*, while predicting QoQ sales *declines* in 4Q21 (April-June) and 1Q22 (July-September). Mot. at 4-7, 11. So Plaintiffs' argument that there were "fewer deliveries" those summer months (Opp. at 6) tracks—not contradicts—Defendants' statements. *Id*. (citing cases).

Finally, Plaintiffs continue to argue that Peloton misrepresented the reason for its inventory growth. Opp. at 8-10. But in disclosures Plaintiffs tellingly delete from their SAC, Peloton told investors exactly why its inventory was growing. *See* AC ¶¶ 113-115. In February 2021, Peloton announced plans to make "extensive supply chain investments" because of its inability to meet "strong demand" in 2020. Ex. 7. Then in August, the Company explained it was "building" inventory to "stag[e] for what will be our biggest holiday ever." SAC ¶ 186. Indeed, after a severely supply-constrained 2020, Peloton needed "ample" inventory to ensure "low expected

3

OTDs." Ex. 11. When Peloton's expectations and plans changed in 2022, it disclosed that, too. Ex. 13; *Bldg. Trades Pens. Fund of W. Penn., v. Insperity, Inc.*, 2022 WL 784017, at *13 (S.D.N.Y. Mar. 15, 2022) (dismissing where company was "abundantly transparent"). Plaintiffs quibble with Foley's use of the word "healthy" to describe Peloton's inventory in November 2021 (Opp. at 9), but that also fails: "Section 10-b is not concerned with such subtle disagreements over adjectives and semantics." *Okla. Firefighters Pens. And Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 575 (S.D.N.Y. 2018). Peloton disclosed its inventory levels, and why it had built that inventory. In hindsight, Plaintiffs may disagree with Peloton's business strategy, but that is not securities fraud. *See In re Tarragon Corp. Sec. Litig.*, 2009 WL 10732259, at *4 (S.D.N.Y. Mar. 27, 2009).

Plaintiffs' argument that Peloton's risk disclosure (it "may experience excess inventory") had already materialized by "December 2020" fails for similar reasons. *See* Opp. at 11.[1] To start, Plaintiffs ignore the risk about which Peloton actually warned: that "excessive" inventory "may result in inventory write-downs or write-offs and the sale of excess inventory at discounted prices." Ex. 2. Plaintiffs do not claim either risk materialized during the Class Period. Ex. 3 at 52; *Liu v. Intercept Pharms., Inc.*, 2020 WL 1489831, at *12 (S.D.N.Y. Mar. 26, 2020) ("no [] allegations" risk materialized). At most, Plaintiffs point to McCarthy's *September 2022* statement that Peloton was "drowning in inventory." Opp. at 2; SAC ¶ 2. But that says nothing about inventory *eight months earlier* when the last Challenged Statement was made—during a time Peloton was building more product to ensure short delivery times for the anticipated holiday rush. *See Gross*, 2021 WL 9803956, at *5 n.9 (post-class statements "cannot support" a "statement was false at the time it was made"). Moreover, even Plaintiffs say Peloton was supply-*constrained* through much of

---

[1] Plaintiffs' CW allegations also contradict each other on this point and are thus unreliable. For example, one CW says inventory levels reached excessive levels by "Christmastime 2020"; another says by "April or May of 2021"; still another says it was by "June of 2021." Opp. at 9-10.

2021—not that it had "excess" inventory.  *See* SAC ¶¶ 64, 165.

***PSLRA Safe Harbor***.  Defendants' Motion identified eight forward-looking statements protected by the safe harbor.  *See* Mot. at 13.  Plaintiffs do not address two of them (Statements 3, 10), and have thus "forfeited" their challenge to those statements.  *Wilbush v. Ambac Fin. Grp. Inc.*, 271 F. Supp. 3d 473, 487 n.9 (S.D.N.Y. 2017).  The Court already found that three others were protected by the safe harbor—and Plaintiffs do not address the Court's reasoning.  Ord. at 19 (Stmts. 1, 11, and 13).  And as to the remaining three (Stmts. 2, 14, and 19), either they are forward-looking on their face, or Plaintiffs omit the forward-looking language.  For instance, Plaintiffs quote Woodworth's February 4, 2021 statement, "we're still seeing very strong organic demand across all geographies across all products," Opp. at 5, but they omit the first part of her statement, where she explained, "I would just highlight obviously, *that's reflected in the revised revenue guidance* that we've given for Q3 and Q4" (which Peloton exceeded).  App. A at 2.  Plaintiffs do the same thing when quoting Foley's statement about "democratizing" access to fitness—leaving out that he was discussing "the entire year's forecast."  *Id*. at 14; *see also id*. at 19 ("*Looking ahead*, we're about to enter our busiest time," and "inventories were healthy" heading into holidays).  These statements all relate to "Defendants' projections regarding the future."  Ord. at 19; *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 210 (S.D.N.Y. 2022).

Plaintiffs argue that none of the statements is "protected by the PSLRA's safe harbor" because Peloton's cautionary language was not specific enough, or because the risks had "already materialized."  Opp. at 14.  Plaintiffs made this exact argument last time, and the Court rejected it.  *See* Ord. at 19-21.  As the Court explained, Peloton's warnings were "both specific and realistic about the precise risk factors faced by Peloton as a company," and described "how the COVID-19 pandemic could potentially affect Peloton's business."  *Id*.; *see also* Mot. at 4, 14.  Plaintiffs' claim

5

that the risk of a "decline in demand" already materialized (Opp. at 14) is also wrong.  Plaintiffs

concede Peloton projected QoQ sales declines in the Class Period, but that those projections

reflected *YoY growth*, which Peloton met each quarter.  *See In re Barrick Gold Corp. Sec. Litig.*,

341 F. Supp. 3d 358, 378 (S.D.N.Y. 2018) (Opp. at 14) (dismissing where company met guidance).

Finally, Plaintiffs argue Defendants made the statements with "actual knowledge" of

falsity.  Opp. at 14.  But Plaintiffs' allegations do not show scienter, much less the "stricter"

"knowing falsity" standard.  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *infra*, II.B.

***Opinions***.  Plaintiffs address only one of the four statements Defendants identified as non-

actionable opinions (Statement 11), and thus have forfeited any challenge to Statements 10, 13,

and 14.  *Compare* Mot. at 15-16 *with* Opp. at 12; *see also Wilbush*, 271 F. Supp. 3d at 487 n.9.

Plaintiffs argue that Woodworth's statement—"guidance reflects *our expectation* of continued

strong demand"—is not an opinion but a "representation[] of existing fact."  Opp. at 12.  But as

Plaintiffs' case explains, a "statement of fact is objectively verifiable."  *In re Chi. Bridge & Iron

Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *6 (S.D.N.Y. May 24, 2018).  Future expectations are

not objectively verifiable.  *See In re Aratana Therap. Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758

(S.D.N.Y. 2018) ("expectations" about FDA approval are opinions); *see also Omnicare, Inc. v.

Laborers Dist. Council Constr. Pens. Fund*, 575 U.S. 175, 187-88 (2015).  So Plaintiffs instead

assert the opinion is actionable because Woodworth "did not hold the belief professed" or "omitted

information that made the statement misleading."  Opp. at 12. Both arguments are meritless.

*First*, Plaintiffs allege no facts suggesting Woodworth did not believe her statement. On

the contrary, Woodworth provided investors the bases for her opinion—detailing several specific

assumptions underlying her expectations.  *See* Ex. 9 at 11-12.

*Second*, Plaintiffs say (i) Woodworth "knew" demand "had declined" by February 2021,

6

(ii) knew "inventory had swelled" by "summer of 2021," and (iii) those "facts" "contradicted any 'opinion' that demand remained strong." Opp. at 13. Plaintiffs' own allegations refute the first point. In the SAC, Plaintiffs claim Peloton experienced a "boon" and "increased demand" in early 2021. SAC ¶¶ 64, 110, 165. As to the second point, Peloton told investors it was purposefully increasing inventory to "decrease OTD times" ahead of the holiday season—so knowing about inventory growth was not a secret. Opp. at 10; SAC ¶ 186. And demand *remained* strong, as Peloton projected YoY growth and met its "guidance throughout the Class Period." Ord. at 23.

*__Puffery__*. Plaintiffs do not specifically address the nine statements Defendants identified as non-actionable puffery, and thus have forfeited any argument that the statements are actionable. App. A at 1-3, 9-11, 13-14, 19; *Wilbush*, 271 F Supp. 3d at 487 n.9. Instead, Plaintiffs generally argue *all* the Challenged Statements are actionable because they sought "to alleviate investor concerns about Peloton's rising inventory levels." Opp. at 15. But only three of the statements even concern inventory, and none is actionable. Indeed, the Court already found Statement 9 (discussing "increased inventory") was puffery. Ord. at 21-22. The other two statements— building inventory for "what will be our biggest holiday ever," and saying Peloton's inventory was "healthy" and its "logistics teams are well-equipped" going into the holidays (App. A at 13, 19)— are precisely the type of vague expressions of optimism that courts dismiss. Mot. at 15-16.

**B.     Plaintiffs Do Not Allege a Strong Inference of Scienter**

*__No Motive or Opportunity__*. Plaintiffs argue that Defendants were "motiv[ated] to commit" fraud because they allegedly "realized tremendous profits" from Class-Period stock sales. Opp. at 20. But as their own cases explain, the sale "of a large quantity of stock during the Class Period, by itself, is insufficient to establish an inference of motive." *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 493 (S.D.N.Y. 2018) (Opp. at 23); *In re Schol. Corp. Sec. Litig.*, 252 F.3d 63, 75 (2d Cir. 2001) ("dollar amount cannot be considered in isolation") (Opp. at 20). That is

7

particularly true here, since (as Plaintiffs admit, Opp. at 22) the sales were made "pursuant to Rule 10b5-1 plans, adopted before the Class Period, that called for automatic sales at predetermined price points." *Koplyay v. Cirrus Logic, Inc.*, 2013 WL 6233908, at \*6 (S.D.N.Y. Dec. 2, 2013).

Plaintiffs speculate Defendants "strategically amended" their plans to "take advantage of an inflated stock price or insider information," but support those assertions with no particularized facts. Opp. at 22. For example, Plaintiffs say Woodworth and Lynch "abruptly ceased trading" in September 2021, *id.*, but allege no facts that either executive's trading contravened the terms of their plans. *Reiner v. Teladoc Health, Inc.*, 2021 WL 4451407, at \*5 (S.D.N.Y. Sept. 8, 2021). Likewise, that Foley terminated his plan in August 2021 suggests he "honestly believed" Peloton would continue to grow. *In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1040 (N.D. Cal. 2000).

Plaintiffs claim Defendants sold between 37% and 100% of their Peloton shares (Opp. at 21), but they concede those figures omit Class B stockholdings. When those holdings are included, the Speaker Defendants retained at least 60% of their total shares. *See* SAC App'x B-D; Mot. at 19-20 (citing cases).[2] Nor is it unusual that certain (pre-determined) sales occurred after earnings announcements (Opp. at 21)—indeed, it is typical for officers to sell then because they do *not* possess MNPI. *Lipton v. Pathogen. Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002).

Finally, Foley's and Lynch's pledges do not support a strong inference of scienter because those loans are "analogous to stock *ownership*"—not stock *sales*. *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 114 (D. Conn. 2005) (stock ownership cannot establish motive); Mot. at 20.

***No Circumstantial Evidence of Fraud***. Having failed to plead motive, Plaintiffs' "circumstantial evidence" allegations do not meet the "correspondingly greater" pleading standard

---

[2] Plaintiffs omit Defendants' vested Class B stock options from their percentages. When included, Defendants retained far *more* than 60% of their holdings. *Compare* Opp. at 21 n.17 (omitting Class B stock options) *with* Exs. 15-21 (Defendants' Class B options were over 50% vested).

for scienter. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Plaintiffs argue Defendants had "actual knowledge" that (i) "sales targets were missed repeatedly"; (ii) "actual sales had declined and were continuing to decline"; and (iii) "inventory levels were ballooning." Opp. at 16. None of these allegations shows Defendants knew facts "contradicting their public statements." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018).

Starting with **sales targets**, the Opposition says CW10 claimed "Foley and Lynch attended weekly meetings with Peloton's Chief Sales Officer" where "sales quotas" were discussed. Opp. at 19. But CW10 does not talk about *any* meetings in the SAC, much less meetings where Foley or Lynch discussed missed quotas. SAC ¶¶ 60-64. And even if Defendants knew about some missed quotas, that would not contradict the Challenged Statements, which discuss guidance—not quotas. *See City of N. Miami Beach Police Officers' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *9 (S.D.N.Y. Jan. 21, 2021) (knowledge must "contradict" statements).

As to **actual sales**, Plaintiffs argue Defendants attended meetings and had "access to" "real-time" sales reports, so they knew "sales were declining." Opp. at 3, 16. But having "access to" reports is not enough. Plaintiffs "must specifically identify the reports" Defendants reviewed, and explain how those reports contradicted the Challenged Statements—which Plaintiffs do not do. *Nat'l Gen.*, 2021 WL 212337, at *8. Indeed, that sales "were declining throughout 2021" was not a secret; Defendants publicly projected those declines. Mot. at 8-10. Plaintiffs also point to CW1's allegation that Woodworth and Lynch were "informed that demand was expected to decline and did in fact decline in March of 2021," Opp. at 17, but as the Court recognized, that account "need not be credited" because Peloton achieved record results that quarter. Ord. at 24.

Regarding **inventory**, Plaintiffs speculate Defendants must have known their statements were false because they attended "meetings" and had "access to [] software" tracking inventory.

9

Opp. at 17-18.  Again, Plaintiffs do not identify *any* specific report showing knowledge or recklessness.  At most, they claim CW1 "told Lynch" in March or April of 2021 that CW1 was "concerned about the growing inventory levels."  Opp. at 17.  But Plaintiffs do not point to any facts suggesting that Lynch shared that view, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021), or that he should have—indeed, Plaintiffs allege Peloton was supply-*constrained* in those months.  SAC ¶ 64 ("In April of 2021, the lead time to receive a bike was 8-10 weeks").

## III.    PLAINTIFFS FAIL TO PLEAD AN INSIDER-TRADING CLAIM

Plaintiffs' insider-trading claim against the Non-Speaker Defendants also fails.  To start, Plaintiffs concede that the Non-Speaker Defendants made their trades under pre-arranged Rule 10b5-1 plans, SAC ¶¶ 302, 307, 310, which alone requires dismissal.  *See* Mot. at 23 (citing cases).  As to the alleged possession of **MNPI**, Plaintiffs assume the Non-Speaker Defendants knew about a "widening gap" between "demand and supply" because they were executives.  Opp. at 25.  But holding "high-level positions" is not enough to show the Non-Speaker Defendants were aware of "adverse information."  *Turquoise Hill*, 625 F. Supp. 3d at 239-40; Mot. at 25.  Finally, Plaintiffs' own authority shows their trades were not **contemporaneous** with Defendants' sales.  Indeed, in Plaintiffs' cases, the "contemporaneous" trades occurred on the same day or "within a few days"— and none involved large trading volumes or significant price differentials.  *See SEC v. McCaskey*, 2002 WL 850001, at *11 n.15 (S.D.N.Y. Mar. 26, 2002); *In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 177 (S.D.N.Y. 2021) (same day).  Here, Robeco purchased between six and eleven trading days after Defendants' sales, with more than *27 million* shares traded in the meantime.  Mot. at 24.  And Hialeah's purchase came the day after *12.8 million shares* were traded at significantly different prices to Cortese's earlier sales.  *Id*. at 24-25.

## IV.    CONCLUSION

Defendants request that the Court dismiss the SAC with prejudice.

Dated:  August 18, 2023
      New York, New York

By: /s/ Andrew B. Clubok

Andrew B. Clubok
Susan E. Engel
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, New York 10020
andrew.clubok@lw.com
susan.engel@lw.com
Telephone: (212) 906-1200

Michele D. Johnson (*pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
michele.johnson@lw.com
Telephone: (714) 540-1235

Nicholas J. Siciliano (*pro hac vice*)
LATHAM & WATKINS, LLP
330 North Wabash Ave., Suite 2800
Chicago, Illinois 60618
nicholas.siciliano@lw.com
Telephone: (312) 876-7700

Whitney B. Weber (*pro hac vice*)
LATHAM & WATKINS, LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111
whitney.weber@lw.com
Telephone: (415) 391-0600

*Attorneys for Defendants Peloton Interactive, Inc., John Foley, William Lynch, Jill Woodworth, Thomas Cortese, Mariana Garavaglia, and Hisao Kushi*

11