**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBECO CAPITAL GROWTH FUNDS SICAV – ROBECO GLOBAL CONSUMER TRENDS and CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH, <br><br> *Defendants*. | 21-CV-09582 (ALC) (OTW) <br><br> The Honorable Andrew L. Carter <br> The Honorable Ona T. Wang <br> **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT........................................................................................................................... 2

I.   The Opposition Does Not Salvage Plaintiffs' Scienter Allegations...................................... 2

    A.   Plaintiffs Misrepresent the Standard for Pleading Scienter under the PSLRA............ 2

    B.   The SAC Lacks Any Cognizable Motive Allegations.................................................. 2

    C.   The SAC Lacks "Correspondingly Greater" Circumstantial Allegations ................... 3

        1.   Plaintiffs Concede Defendants' Detailed and Accurate Disclosures.............. 4

        2.   Purported CW Reports Do Not Allege Defendant-Specific Scienter............. 5

        3.   Plaintiffs Disregard the Uncertainties Posed by the Pandemic...................... 6

        4.   Defendants Are Not Raising a Truth-on-the-Market Defense ....................... 7

        5.   The SAC Does Not Plead Any Other Facts Suggesting Scienter................... 7

        6.   Plaintiffs Do Not Have a Cogent and Compelling Theory of Scienter........... 8

II.  Plaintiffs Fail to Allege Loss Causation........................................................................... 9

III. Lead Plaintiff Lacks Standing ......................................................................................... 10

CONCLUSION...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   879 F. 3d 474 (2d Cir. 2018) ................................................................................ 7

*In re Celestica Inc. Sec. Litig.*,
   2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010) ...................................................... 5

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ............................................................................ 7, 10

*City of Providence v. Aeropostale, Inc.*,
   2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ................................................... 5, 6

*Damri v. LivePerson, Inc.*,
   772 F. Supp. 3d 430 (S.D.N.Y. 2025) .................................................................. 8

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) .................................................................. 3

*Gabelli Asset Fund v. Garrett Motion Inc.*,
   2024 WL 1653451 (2d Cir. Apr. 17, 2024) ...................................................... 4, 7

*In re IPO Sec. Litig.*,
   399 F. Supp. 2d 261 (S.D.N.Y. 2005) .................................................................. 9

*Jones v. Perez*,
   550 F. App'x 24 (2d Cir. 2013) ............................................................................ 3

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
   897 F. Supp. 2d 168 (S.D.N.Y. 2012) .................................................................. 4

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013) .................................................................. 8

*New Orleans Empls. Ret. System v. Celestica Inc.*,
   455 F. App'x 10 (2d Cir. 2011) ............................................................................ 6

*Nguyen v. New Link Genetics Corp.*,
   297 F. Supp. 3d 472 (S.D.N.Y. 2018) .................................................................. 3

*Puchtler v. Barclays PLC*,
   2025 WL 887502 (S.D.N.Y. Mar. 21, 2025) ........................................................ 2

*In re Salix Pharms., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ...................................................... 5

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024) ................................................................. 5

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ............................................................................. 5, 6

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) .............................................................................. 8

*In re SolarEdge Techs., Inc. Sec. Litig.*,
    2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) ................................................ 5, 6, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 2

*Plutzer ex rel. Tharanco Grp., Inc. v. Bankers Tr. Co.*,
    2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ....................................................... 10

*United States v. Schiff*,
    602 F.3d 152 (3d Cir. 2010) .............................................................................. 5

**Statutes**

PSLRA ..................................................................................................*passim*

**GLOSSARY**

The following terms are used in this memorandum:

| Term | Definition |
|---|---|
| 2COA Op. or Appellate Decision: | Second Circuit's August 27, 2025 Opinion, on appeal of SAC dismissal with prejudice, Dkt. 110. |
| 2COA Conc.: | Second Circuit Judge Jon O. Newman's August 27, 2025 partial concurrence and partial dissent of Appellate Decision, Dkt. 110-1. |
| 4Q20, 1Q21, 2Q21, 3Q21, 4Q21, 1Q22, or 2Q22: | Quarterly periods, starting with the fourth quarter of FY20 through the second quarter of FY22.<br><br>Peloton's fiscal year begins on July 1 of the prior calendar year (e.g., the 2Q21 10-Q was filed in February 2021, covering the period September through December 2020). |
| AC: | Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law, filed June 25, 2022, Dkt. 51. |
| Bike: | The original Peloton Bike, SAC ¶ 31. |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statements: | Statements Plaintiffs allege are false or misleading, SAC ¶¶ 187, 213–18. |
| Class Period: | August 27, 2021 through and including January 19, 2022, narrowed from February 5, 2021 through and including January 19, 2022, as a result of the Appellate Decision. |
| Connected Fitness Products: | Peloton's technology-enabled fitness equipment, including the Bike and Bike+ stationary bikes, and the Tread and Tread+ Treadmills. |
| CW(s): | Confidential Witness(es), as identified in the SAC. |
| Defendants: | Peloton and Individual Defendants |
| Exchange Act: | The Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* |
| Ex(s). Or Exhibit(s): | Exhibits attached to the Declarations of Stephen L. Ascher, either filed concurrently or with Defendants' MTD, which are public filings and statements and are incorporated into the SAC and/or subject to judicial notice. |
| FY20, FY21, or FY22: | Fiscal years, starting with fiscal year 2020 through fiscal year 2022.<br><br>Peloton's fiscal year begins on July 1 of the prior calendar year (e.g. FY20 is July 1, 2019 – June 30, 2020). |
| Individual Defendants: | John Foley (Peloton CEO during the Class Period), William Lynch (Peloton President during the Class Period), Jill Woodworth (Peloton CFO during the Class Period) |

| **Term** | **Definition** |
|---|---|
| Inside Sales Team: | Team of sales staff, account associates, or account executives who offer one-on-one consultations with customers via phone, email, or online chat on Peloton's website. |
| Ord. or Second MTD Order: | Court's Order and Opinion dismissing the SAC, dated September 30, 2024, Dkt. 108. |
| Opp. or Opposition: | Plaintiffs' opposition to Defendants' renewed motion to dismiss the SAC, dated November 17, 2025, Dkt. 125. |
| OTD: | Order-to-delivery window, which represents the time between a customer ordering a Peloton product and receiving that product. |
| Peloton or Company: | Peloton Interactive, Inc. |
| Plaintiffs: | Lead Plaintiff Robeco Capital Growth Funds SICAV – Robeco Global Consumer Trends (individually, "Robeco") and Additional Plaintiff City of Hialeah Employees' Retirement System (individually, "Hialeah") |
| PSLRA: | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, 77l, 77z–1, 77z–2, 78a, 78j–1, 78t, 78u, 78u–4, 78u–5 |
| Q1, Q2, Q3, Q4: | Quarterly periods, starting with the first quarter of a fiscal year through the fourth quarter of the fiscal year. Peloton's fiscal year begins on July 1 of the prior calendar year. |
| QoQ: | Quarter-over-quarter |
| RSUs: | Restricted stock units |
| SAC or Complaint: | Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Law, filed May 6, 2023, Dkt. 92. |
| MTD: | Defendants' memorandum of law in support of their renewed motion to dismiss the SAC, dated October 15, 2025, Dkt. 121. |
| YoY: | Year-over-year |

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition concedes, as it must, that the SAC's original, sweeping allegations were rejected by the Second Circuit and are now limited to the allegation that Peloton failed to acknowledge "excess inventory" in August 2021. Plaintiffs cannot allege a cogent theory of fraud concerning the little that is left of their case.

As to scienter, Plaintiffs admit that almost all their personal financial motive allegations are irrelevant now that their case has been limited; the few motive arguments fabricated for their Opposition are illogical. Without an alleged motive, Plaintiffs face an even more exacting pleading standard: they must allege "highly unreasonable" behavior representing "an extreme departure from the standards of ordinary care." MTD at 17. Plaintiffs do not acknowledge, let alone satisfy, this heavy burden.

As Plaintiffs concede, Peloton truthfully disclosed its strategy to accumulate inventory, inventory levels, and the risk of misestimating inventory needs due to pandemic uncertainty. And the Second Circuit concluded that Peloton accurately disclosed anticipated demand. As numerous cases have held, a defendant who intended to defraud investors would not have truthfully disclosed so much—and misrepresented so little—about the exact issues in question. MTD at 17–20.

Plaintiffs argue that because Defendants knew Peloton's inventory levels, they must have deemed inventory "excessive." But Plaintiffs conflate inventory data (which they concede Peloton accurately disclosed) with whether Peloton had "excess" inventory (which depends on uncertain *future* demand). Given Peloton's factual disclosures, investors could draw their own conclusions about the difficult judgment of whether Peloton's increasing inventory levels would later turn out to be "excessive," especially given the uncertainty of navigating a once-in-a-century pandemic.

Plaintiffs' loss causation theory also cannot withstand the Second Circuit's drastic reduction of their case. Loss causation requires a stock price decline resulting from the "corrective

1

disclosure" of the previously misrepresented facts. But Peloton never disclosed that it had "excess" inventory in 2021. Peloton's stock price declined in November 2021 after it revised forward-looking revenue guidance. Plaintiffs claim in their brief, without support, that "excess" inventory required that revision, but Peloton disclosed (and the SAC does not challenge) that lower-than-expected holiday demand was the reason. Plaintiffs' claims should be dismissed.

**ARGUMENT**

**I.      The Opposition Does Not Salvage Plaintiffs' Scienter Allegations**

**A.      Plaintiffs Misrepresent the Standard for Pleading Scienter under the PSLRA**

Although Plaintiffs do not contest their burden to allege scienter, Opp. at 10, they attempt to reduce the PSLRA's "exacting" pleading standard, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), primarily by arguing that the Second Circuit's decision regarding falsity lends weight to scienter, Opp. at 1, 9–11 & 20 (Arg. No. 1). But that would "absurd[ly] . . . collapse" scienter and falsity. *Puchtler v. Barclays PLC*, 2025 WL 887502, at *14, *17 (S.D.N.Y. Mar. 21, 2025) (dismissing on scienter grounds even though plaintiffs pled falsity). And the Second Circuit expressly directed this Court to consider scienter independently on remand. 2COA Op. at 20.

**B.      The SAC Lacks Any Cognizable Motive Allegations**

Plaintiffs do not contest that to allege personal financial motive, each Individual Defendant's stock transactions during the Class Period must have been "unusual" or "suspicious." MTD at 15–16. Yet the Opposition does not identify any such transactions. To the contrary, Plaintiffs concede that the vast majority of transactions could not have been suspicious because they predated the Class Period; nor do they dispute that every transaction was conducted pursuant to 10b5-1 plans *pre-existing* the Class Period, or for tax reasons. *Id*. Instead, Plaintiffs assert that the Individual Defendants "each personally benefited by keeping Peloton's stock artificially inflated during the Class Period, buying themselves time to cancel their 10b5-1 trading plans just

2

before they disclosed the truth to investors." Opp. at 12 (Arg. No. 4). That makes no sense. Although the Opposition lumps all Defendants together, *id.*, the SAC only alleges when one Defendant terminated a trading plan (SAC ¶ 286)—and all Defendants allegedly ceased trading more than six weeks before the alleged "truth" was revealed, thus *retaining* Peloton stock despite its risk of *declining* in value. MTD at 16. Plaintiffs neither explain how that timing could be suspicious nor distinguish Defendants' cases rejecting similar motive allegations. *Id.*[1]

### C.      The SAC Lacks "Correspondingly Greater" Circumstantial Allegations

Because Plaintiffs cannot allege that the Individual Defendants had personal financial motives to defraud, the strength of their remaining scienter allegations "must be correspondingly greater" than in a case with motive allegations. MTD at 17. Plaintiffs must meet the higher standard of alleging that each Defendant engaged in "highly unreasonable" behavior that represented "an extreme departure from the standards of ordinary care." *Id.* Plaintiffs do not even acknowledge this heightened standard, let alone satisfy it with respect to each Defendant. As detailed below, Plaintiffs cannot meet their burden when Defendants made so many truthful disclosures about the same subject matter, and the only Challenged Statements concerned a future-looking judgment call interpreting these truthful disclosures during unprecedented pandemic uncertainty. *E.g.*, *Jones v. Perez*, 550 F. App'x 24, 26 (2d Cir. 2013) (no scienter where plaintiffs merely challenged interpretation of "accura[te]" financials). At most, Defendants "took a more optimistic view" of Peloton's prospects—others "viewing the same publicly available information" could reach different conclusions, negating any inference of fraud. MTD at 20 (collecting cases).

---

[1] Plaintiffs' cases, by contrast, involved defendants who opportunistically adopted and amended plans "during" the class period to trade at irregular and erratic intervals, disposing of "a large percentage" of individual holdings. *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 494–96 (S.D.N.Y. 2018); *cf. Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 200–01 (S.D.N.Y. 2010). The Opposition does not identify any such circumstances here.

3

### 1.    Plaintiffs Concede Defendants' Detailed and Accurate Disclosures

Plaintiffs cannot allege highly unreasonable misconduct because they concede that Defendants made detailed and accurate disclosures regarding the same (and related) topics as the Challenged Statements: inventory, demand, and pandemic risks—allowing investors to reach their own judgments about Peloton's inventory strategy, and rendering Plaintiffs' theory of fraud unpersuasive given Defendants' candor. *E.g.*, *Gabelli Asset Fund v. Garrett Motion Inc.*, 2024 WL 1653451, at *3 (2d Cir. Apr. 17, 2024); MTD at 17–20. That is especially true because, as Plaintiffs allege, Peloton continued building inventory during the Class Period, which would make no sense if Defendants believed inventory was "excessive." MTD at 17–18. Plaintiffs fail to distinguish cases (MTD at 20) refusing to infer fraud where, as here, defendants were at most too optimistic about accurately disclosed data.[2]

Instead, Plaintiffs claim that Defendants are arguing they did not have scienter because "they purportedly made different, 'accurate' statements elsewhere." Opp. at 16 (Resp. No. 3). But that is not Defendants' point. Peloton's indisputably accurate disclosures were on the same subject and showed that its inventory levels had increased dramatically amid pandemic uncertainties as to future demand—allowing investors to draw their own conclusions. Because Peloton's truthful disclosures were on the same subject as the Challenged Statements, all the statements should be considered holistically. *E.g.*, *Kuriakose*, 897 F. Supp. 2d at 185 ("bevy of truthful disclosures" on related topics undermined scienter), *aff'd*, 543 F. App'x 72 (2d Cir. 2013).

---

[2] Plaintiffs try to distinguish only a few of the many cases holding no fraudulent intent based on a holistic consideration of **all** the defendants' statements by arguing that those courts "**never** found that **any** of the challenged misstatements were false or misleading." Opp. at 17; *compare* MTD at 18–20. Not so. In *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168 (S.D.N.Y. 2012), "some of [the defendant's] statements" were "ultimately proven wrong," and in *Gabelli Asset Fund v. Garret Mot. Inc.*, 2024 WL 1653451, at *2 (2d Cir. Apr. 17, 2024), the Court did "not [need]" to address falsity because the pleadings failed on scienter grounds regardless.

Plaintiffs' own authorities show why Peloton's alleged failure to acknowledge it had "excessive" inventory was not fraudulent. Plaintiffs' cases sustained claims based on schemes to manipulate a company's overall financials—typically via "channel stuffing," i.e. inflating sales and earnings by misrepresenting inventory and demand. *See In re Celestica Inc. Sec. Litig.*, 2010 WL 4159587, at *2 (S.D.N.Y. Oct. 14, 2010) (defendants "manipulated" inventory "resulting in the overstatement of earnings"); *In re SolarEdge Techs., Inc. Sec. Litig.*, 2024 WL 4979296, at *7, *10 (S.D.N.Y. Dec. 4, 2024) (channel stuffing hid that inventory "was growing"); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *2–3, *14 (S.D.N.Y. Apr. 22, 2016) (defendants misrepresented "true inventory levels" amid channel stuffing); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 73–75 (2d Cir. 2001) (defendants "delay[ed] disclosure" of figures impacting inventory to mask "downward trend" in profitability and inflate income); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 310, 313, 318 (S.D.N.Y. 2024) (defendants had to "restate" financials due to channel stuffing); *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *5, *13 (S.D.N.Y. Mar. 25, 2013) ("accounting gambit" to inflate earnings); *United States v. Schiff*, 602 F.3d 152, 156–57 (3d Cir. 2010) (channel stuffing "increase[d] sales and earnings"). By contrast, here, there is no alleged channel stuffing and no dispute that Peloton accurately disclosed inventory, anticipated demand, and its financials.

### 2.    Purported CW Reports Do Not Allege Defendant-Specific Scienter

Reports from supposed CWs do not fill these fatal gaps in Plaintiffs' allegations. Plaintiffs' Opposition concedes that none of the CWs accused *Defendants* of holding views contrary to the Challenged Statements and that, at most, CW-1 personally disagreed with Defendants. MTD at 20–22. Nor do Plaintiffs distinguish case law refusing to conflate such disagreement with fraud. *Id.* Plaintiffs fall back on vague reports and meetings regarding inventory and sales at large, Opp. at 11, 19–20 (Arg. No. 3, Resp. No. 6), but ignore that Defendants are not accused of

misrepresenting inventory levels or sales—only of not acknowledging that inventory levels were "excessive" and triggered the Bike price cut. Inventory can only be considered "excessive," however, by comparing it to anticipated demand. And the Opposition concedes that the Second Circuit deemed Peloton's statements about demand throughout the Class Period accurate. MTD at 2, 5–7, 9. Plaintiffs thus cannot demonstrate that any Defendant believed that Peloton's inventory levels were "excessive" leading up to the holiday season; no Defendant "actually possessed information contradicting" the Challenged Statements—as the case law requires. MTD at 21.[3]

Plaintiffs' cited cases highlight this shortcoming in their theory. Unlike here, those cases involved present factual statements that were directly contradicted by detailed and specific CW reports—spreadsheets "detailing the extent of excess and obsolete inventory" levels that defendants manipulated, *New Orleans Empls. Ret. System v. Celestica Inc.*, 455 F. App'x 10, 12–13 (2d Cir. 2011), meetings regarding the specific "sales and inventory problems" that defendants concealed, *City of Providence*, 2013 WL 1197755, at *3, reports of rising inventory returns even though defendants "publicly represented that returns were not increasing," *In re Scholastic Corp.*, 252 F.3d at 76–77, and data reflecting high inventory levels "contradict[ing]" statements that "inventories were low," *In re SolarEdge*, 2024 WL 4979296, at *16. Plaintiffs do not identify any contradictory information reviewed or discussed by the Individual Defendants.

### 3.    Plaintiffs Disregard the Uncertainties Posed by the Pandemic

Plaintiffs also cannot allege "highly unreasonable" misconduct because they do not contest that after intentionally accumulating inventory to prepare for "our biggest holiday ever," Peloton timely reduced its projections when it realized that key inputs for its demand model were lower than expected due to pandemic uncertainty. MTD at 22–23. Plaintiffs thus fail to distinguish cases

---

[3] Plaintiffs' core-operations arguments 6 and 7, Opp. at 13–14, fail for the same reason.

6

finding a lack of scienter when Defendants suffered business reversals because of dislocations caused by COVID-19. *Id.* Plaintiffs' only response is that this case supposedly concerns "misstatements of present fact" rather than projections, Opp. at 18, 20 (Resp. Nos. 4, 7), but as discussed *supra* 6, whether Peloton's inventory levels were "excessive" hinged on anticipated *future* holiday demand that had not yet occurred.

### 4. Defendants Are Not Raising a Truth-on-the-Market Defense

Unable to distinguish Defendants' cases dismissing similar claims on scienter grounds at the pleading stage, MTD at 17–20, Plaintiffs argue that Peloton's truthful disclosures relate to a "truth-on-the market" defense (or materiality), Opp. at 14, 16–17 (Resp. Nos. 1, 3). Plaintiffs are incorrect. The "truth-on-the-market" defense posits that "the market was already aware of the truth regarding defendants' misrepresentations[,]" such that "class members could not have relied on those misstatements in choosing to buy stock." *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F. 3d 474, 485 (2d Cir. 2018). But Defendants do not argue reliance, materiality, or that investors knew the "truth" from other sources. Instead, Defendants argue that because they gave investors sufficient information to "easily evaluate" the risks of Peloton's deliberate inventory growth, Defendants lacked fraudulent intent. *Gabelli*, 2024 WL 1653451, at *3 (public "financial information" made fraud "unlikely"); MTD at 17–18. This argument properly concerns scienter. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 & n.62 (2d Cir. 2014) (rejecting argument that defendants impermissibly argued "truth on the market," and affirming holding as part of holistic assessment that defendant's "specific disclosures" "undercut the inference" that it was "attempting to conceal" truth).

### 5. The SAC Does Not Plead Any Other Facts Suggesting Scienter

Plaintiffs also claim that the Individual Defendants' departures from Peloton after the Class Period were "suspiciously-timed." Opp. at 13 (Arg. No. 5). That argument fails because there is

no allegation that those departures related to accusations of fraud. *Damri v. LivePerson, Inc.*, 772 F. Supp. 3d 430, 469 (S.D.N.Y. 2025) (terminations "without more, do not support" scienter). And the mere fact that the Price Statement was made in response to an analyst question does not meaningfully weigh in favor of scienter, Opp. at 11 (Arg. No. 2), particularly since the distinction between an "offensive" and "defensive" price cut is equivocal, 2COA Op. at 18 n.4 ("a strategy could be both offensive and defensive" and question possibly "posed a false choice").

Plaintiffs also tout an analyst report supposedly questioning Defendants' "credibility" after the Class Period, Opp. at 17 (Resp. No. 3), but the report describes recent events as "bad luck or bad decisions," not efforts to mislead, and says nothing about Peloton's August 2021 pricing strategy or inventory, Ex. 21 at 2. In any event, "generalized [analyst] speculations" do not plead scienter. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 383 (S.D.N.Y. 2013).

### 6.    Plaintiffs Do Not Have a Cogent and Compelling Theory of Scienter

Following the Second Circuit's decision significantly narrowing their case, Plaintiffs' new theory of scienter is that Defendants took a "gamble" that a known risk (of excessive inventory) "will resolve itself" on the hopes that "a 20% [Bike] price cut would successfully reduce the Company's inventory glut[.]" Opp. at 19 (Resp. No. 5). The SAC alleges no facts supporting this theory, which cannot be reconciled with Peloton's accurate disclosures reducing revenue projections just two months later—and Defendants' lack of financial motive in the interim.

The Second Circuit has expressly rejected purported schemes that (as here) were supposedly revealed via financial disclosures a mere "two months later." MTD at 19 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1126, 1130 (2d Cir. 1994)). Unable to distinguish this binding precedent, Plaintiffs try to make the short-lived alleged fraud seem more plausible by stretching it to the last supposed corrective disclosure in January 2022, Opp. at 18; but that ignores Plaintiffs' own pleading concerning Peloton's supposed "about-face" in November 2021, SAC ¶¶

219–27. Because the alleged corrective disclosure was voluntary and only two months after the supposed misrepresentations, *Shields* controls.[4] In sum, Plaintiffs' scienter allegations should be rejected because the far more compelling inference is that Peloton innocently misjudged expected holiday demand and promptly reduced its projections in November 2021 based on updated data.

## II.      Plaintiffs Fail to Allege Loss Causation

Plaintiffs also cannot tie their claimed losses to the very narrow, specific alleged fraud that remains following the Appellate Decision. To plead loss causation via corrective disclosure, Plaintiffs must allege that the "truth" supposedly concealed by the Challenged Statements was disclosed and caused losses—here, that Peloton had "excess" inventory in August 2021. MTD at 23–25. But such a disclosure was never made, and therefore could not have caused any losses. Rather, in November 2021, Peloton's stock price declined by 35% after it announced reduced forward-looking demand projections and resulting reduced revenue forecast guidance. MTD at 24.

As with scienter, Plaintiffs try to reduce their burden by misstating the legal standard; Plaintiffs suggest that mere declines in Peloton's stock price are sufficient to allege loss at this stage. Opp. at 21–22. That is wrong. Where, as here, a company's stock price drops following "downward revisions of forecasts," a plaintiff cannot just point to the decline; it must identify a distinct "disclosing event" related to the alleged misstatement. *In re IPO Sec. Litig.*, 399 F. Supp. 2d 261, 267 (S.D.N.Y. 2005). Plaintiffs fail to satisfy this standard because they again conflate the distinct concepts of reduced demand and "excess" inventory. Plaintiffs argue that Peloton's November 2021 reduced guidance was "attributed to *excess inventory*[.]" Opp. at 22 n.6. But Plaintiffs cite nothing for this false conclusion; in fact (as the SAC does not challenge), Peloton

---

[4] Instead of distinguishing *Shields*, Plaintiffs cite district court opinions certifying relatively short class periods. Opp. at 18. These opinions do not decide scienter. And the fact that some alleged schemes are short-lived does not mean that scienter was adequately alleged here.

reduced its projections because it observed reduced website and showroom traffic heading into the holiday season—key inputs for its demand model. MTD at 9. Plaintiffs also attempt to salvage their theory by arguing that Peloton's November 2021 disclosures contained new inventory data, Opp. at 23, but this regularly disclosed data did not *correct* the Challenged Statements by showing that August 2021 inventory was "excessive"; rather, those disclosures showed that consistent with Peloton's strategy, its inventory had continued to increase, as it had in prior quarters. MTD at 24.

Plaintiffs also do not plead loss causation from the purported corrective disclosures in January 2022. Plaintiffs assert that a pause in the Bike's production, declining consumer demand, and rising inventory levels *after the holiday season* "line up" with facts "underpinning" Peloton's short-lived alleged fraud *before* the holiday season. Opp. at 24. But these events shed no light on whether Peloton made false statements concerning its pricing strategy and inventory almost five months earlier—the only relevant time for Plaintiffs' drastically narrowed case. MTD at 25.

## III.    Lead Plaintiff Lacks Standing

Plaintiffs acknowledge "[p]otential" standing issues but ask the Court to ignore them at the pleading stage. Opp. at 24. The Court "has a duty," however, to consider standing to "ensure that [it] has jurisdiction to entertain the case." *Plutzer ex rel. Tharanco Grp., Inc. v. Bankers Tr. Co.*, 2022 WL 596356, at *4 (S.D.N.Y. Feb. 28, 2022). None of Plaintiffs' cited authority involved (as here) a lead plaintiff without standing to pursue *any* of the claims at issue. Opp. at 24–25. Nor have Plaintiffs moved to substitute Hialeah as Lead Plaintiff. That requires dismissal.

## CONCLUSION

The Court should dismiss the SAC in full with prejudice for the reasons discussed in Defendants' briefing. Plaintiffs have amended their allegations twice and "identified no additional facts or legal theories" they might assert if given leave to amend again. *UBS AG*, 752 F.3d at 188.

Dated: December 10, 2025
      New York, New York

Respectfully submitted,

*/s/  Stephen L. Ascher*

Stephen L. Ascher
Joanna Wright
Anna M. Windemuth
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600
sascher@jenner.com
jwright@jenner.com
awindemuth@jenner.com

*Counsel for Defendants Peloton Interactive, Inc.,
John Foley, William Lynch, and Jill Woodworth*

11