**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROBECO CAPITAL GROWTH FUNDS SICAV – ROBECO GLOBAL CONSUMER TRENDS and CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,**<br><br>**Defendants.** | **1:21-cv-09582 (ALC)**<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Robeco Capital Growth Funds SICAV – Robeco Global Trends ("Robeco") and Plaintiff City of Hialeah Employees' Retirement System ("Hialeah") bring this action against Defendants Peloton Interactive, Inc., John Foley, William Lynch, and Jill Woodworth ("Defendants") for violations of the Federal Securities Laws. This Court previously granted Defendants motion to dismiss which Plaintiffs thereafter appealed to the United States Court of Appeals for the Second Circuit. This case is now back before the Court on remand. Currently pending before the Court is Defendants motion to dismiss the Second Amended Consolidated Class Action Complaint ("SAC") pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) on grounds that the SAC fails to state a

claim and that Lead Plaintiff Robeco lacks standing. For the reasons stated below, the Defendants' motion to dismiss is **GRANTED.**

## BACKGROUND

The Court has previously detailed the factual and procedural history. *See Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, No. 21-CV-9582, 2024 WL 4362747, at *9 (S.D.N.Y. Sept. 30, 2024) ("Opinion"). The Court assumes the Parties familiarity with the background of this case and only includes additional details as relevant to its analysis below. On September 20, 2024, this Court issued an Order & Opinion, granting Defendants' motion to dismiss this case for failure to state a claim. *See id*. Specifically, this Court found that Peloton's statements were "entirely consistent with Peloton's actual financial results" and that the allegations based on confidential witness accounts were "anecdotal" and did not reflect Peloton's performance "as a whole." Id. at *11 (internal quotation marks omitted). Finding that Plaintiffs failed to plausibly allege a claim under § 10(b) and Rule 10b-5, this Court dismissed the remaining claims under § 20(a) and § 20A. Last, having concluded Plaintiffs failed to plead any actionable misstatement or omission, this Court declined to reach the question of whether Plaintiffs adequately pleaded scienter.

On October 21, 2024, Plaintiffs filed a notice of appeal with the United States Court of Appeals for the Second Circuit. *See* ECF No. 109. On August 27, 2025, the Second Circuit issued its opinion, vacating and affirming the judgment in part. *See* ECF No. 110 ("Appellate Decision" or "2COA Op."). Specifically, the Second Circuit "agree[d] with the district court that most of the alleged misstatements were not actionable" and affirmed on that basis. 2COA Op. at 3. However, the Second Circuit "conclude[d] that the plaintiffs plausibly alleged actionable misstatements or omissions based on three statements." *Id*. Accordingly, this Court's prior

judgment was vacated "insofar as it dismissed the claims based on those statements." *Id.* The Second Circuit remanded for further proceedings consistent with their opinion, instructing that "the district court may consider whether the plaintiffs have plausibly alleged scienter with respect to" the remaining alleged misstatements. *Id*. at 20.[1]

On appeal, Plaintiffs did not raise any arguments challenging the dismissal of the insider trading claims under § 20A of the Exchange Act. As such, the Second Circuit found those claims to be waived and affirmed dismissal of all of Plaintiff's insider trading claims. *Id*. at 21 n.5. As a result, former Defendants Thomas Cortese, Mariana Garavaglia, and Hisao Kushi were dismissed with prejudice in this Court's last Opinion. As a result of the Appellate Decision, the class period was narrowed from February 5, 2021 through and including January 19, 2022 to now being August 27, 2021 through and including January 19, 2022. *Id*.

Following appeal, the following alleged misstatements remain:[2]

(1) Foley's statement during an earnings call on August 26, 2021, describing the company's decision to reduce the price of its bike by $400 as an "absolutely offensive" business strategy; and

(2) Peloton's warning of hypothetical risks regarding "excess inventory levels" in its Form 10-K and Form 10-Q filed on August 26 and November 4, 2021[3].

*Id*. at 9; *See also* ECF No. 121, Appendix A.

[1] In a partial concurrence and partial dissent, Circuit Judge Jon O. Newman noted that "although I dissent from the Court's ruling that statements 14 and 20 were adequately pled to survive the motion to dismiss, I have a high degree of confidence that the complaint will ultimately be dismissed for lack of an adequate pleading of scienter and that the heavy pressure often felt to settle a class action securities fraud case will not yield a monetary recovery for the class in this case." 2COA Conc. at 9.

[2] These statements were included in those this Court previously numbered Statements 14 and 20.

[3] The Court notes that although three statements remain, two of the statements are substantively the same. The August 26, 2021 Form 10-K and November 4, 2021 Form 10-Q are two of the alleged misstatements.

On October 15, 2025, Defendants filed their motion to dismiss, along with an accompanying memorandum of law, declarations, and exhibits. *See* ECF Nos. 120-122. On November 17, 2025, Plaintiffs filed their memorandum of law in opposition to Defendants' motion to dismiss. *See* ECF No. 125. On December 10, 2025, Defendants filed their reply memorandum of law in support of their motion to dismiss along with an accompanying declaration and exhibit. *See* ECF Nos. 126, 127. The Court considers the motions fully briefed.

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). "[B]ut jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering such a motion, courts accept as true all factual

allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In considering a motion to dismiss a securities action, the Court may consider "any written instrument attached to the complaint, statements, or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a court make take judicial notice. *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010) (quoting *ATSI Commc'ns,* 493 F.3d at 98); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

## III. Section 10(b) and Rule 10b-5

To plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267, (2014); *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 n.23 (2d Cir. 2017).

"'The test for whether a statement or omission is materially misleading'. . . is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'" *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004). This is an objective test that looks to the understanding of an "ordinary investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015). Importantly, "literal accuracy is not enough. An issuer must as well desist from misleading investors by saying one thing and holding back another." *Id.* at 192. "However, Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information." *Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 397 (S.D.N.Y. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). Thus, issuers have a duty of disclosure "only when necessary 'to make . . . statements made, in light of the circumstance sunder which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. 240.10b-5(b)).

## IV. Fed. R. Civ. P. 9(b) and PSLRA

When a plaintiff has alleged securities fraud claims, the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSLRA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)). Under this heightened pleading standard for scienter, a plaintiff will sufficiently allege scienter and a complaint will survive, "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

## DISCUSSION

Defendants argue Plaintiffs SAC should be dismissed for failure to allege three independent requirements for a claim under Section 10(b) of the Exchange Act: (1) scienter, (2) loss causation, and (3) standing. *See* ECF No. 121at 14. The Court addresses each in turn.

### I. Plaintiffs Fail to Allege a Strong Inference of Scienter

The central question with respect to the Plaintiffs' claims under the Exchange Act "is whether the [c]omplaint adequately pleaded facts giving rise to a strong inference that the … Defendants acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2024) (internal quotations omitted) (citing *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015). To establish scienter, the complaint must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fun, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "Any allegation of conscious misbehavior or recklessness should be 'viewed holistically and together with the allegations of motive and opportunity' to determine whether the complaint supports a strong inference of scienter." *New Eng. Carpenters,* 122 F.4th at 48 (citing *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 78 (2d Cir. 2021)). "Although the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity, the inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. (internal quotations and citations omitted). If no motive or opportunity is shown, "the circumstantial evidence of conscious misbehavior 'must be correspondingly greater' and show 'highly unreasonable' behavior or that which evinces 'an

extreme departure from the standards of ordinary care[.]'" *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (citing *Kanit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)). Plaintiffs fail to allege a strong inference of scienter for the reasons that follow.

**a. Motive**

Plaintiffs allege the Individual Defendants had motive to defraud investors in order to inflate the value of their personal holdings in Peloton stock. *See* ECF No. 125 at 12. Plaintiffs further allege that the Individual Defendants were motivated to do so in order to "buy[] themselves time to cancel their 10b5-1 trading plans just before they disclosed the truth to investors." *Id*. Defendants argue that "[t]he narrowed Class Period negates any inference of 'motive and opportunity' to defraud because the vast majority of the SAC's allegedly suspicious stock sales occurred well before the Class period—making most of Plaintiffs' motive allegation categorically irrelevant." ECF No. 121at 2. Defendants further argue that "the few remaining sales were pursuant to pre-existing 10b5-1 plans which also undermines motive." *Id*. While Plaintiffs contend that pecuniary motive is not required to plead scienter, they nonetheless argue "there is evidence of such motive here." *See* ECF No. 125 at 12. However, to support a finding of scienter, Plaintiffs must allege that the Individual Defendants' personal financial transactions were "unusual." *Ark. Pub. Emps. Ret. Sys. V. Bristol-Myers Squibb Co.*, 28 F.4th at 355 (citing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-75 (2d Cir. 2001)). Plaintiffs fail to allege that any of the relevant transactions here were sufficiently unusual to establish motive.

Plaintiffs argue motive is established because Foley told analysts and investors that the price cut was not defensive, but offensive. Foley stated "just four days after [Foley] falsely assured analysts and investors that his decision to cut the Bike's price was 'absolutely offensive,'

Foley cancelled his trading plan." *See* ECF No. 125 at 12. Plaintiffs further allege "Lynch and Woodworth similarly ceased trading under their plans in September 2021, shortly before the truth was revealed to investors and before Peloton's stock price declined as a result." *Id*. at 12-13. Plaintiffs argue the premature cancellation of the trading plans allowed the Individual Defendants to "avoid[] the obligation to sell their shares at depressed prices once the truth became public." *Id*. at 13. Lastly, Plaintiff's argue the "suspicious timing of the terminations of Defendants' 10b5-1 plans further strengthens the scienter reference."

Plaintiffs' arguments fail for a number of reasons. First, a majority of the SAC's alleged suspicious stock sales took place prior to the now narrowed Class Period. Defendants argue that "[s]tock sales that occur before the Class Period are categorically irrelevant because they cannot demonstrate motive to maintain or inflate the price of the stock during the Class Period." *See* ECF No. 121 at 15 (citing *In re Plug Power, Inc., Sec. Litig.*, 2022 WL 4631892, at *14 (S.D.N.Y. Sept. 29, 2022) (collecting cases)). The Second Circuit has found that where executive officers' "selloff began several months before the [] Class Period" such stock sales are "less unusual." *New England Carpenters,* 122 F.4th at 49 (citing *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,* 28 F.4th at 355). The Court rejects Defendants argument that stock sales that took place prior to the narrowed Class Period are wholly irrelevant in establishing motive. While "statements made in the pre-class period are not actionable," accounts and "'[f]acts that fall outside the relevant period can be considered in determining whether a complaint alleges scienter." *Eden Alpha CI LLP v. Polished.com Inc.,* No. 22-CV-6606 (NGG) (VMS), 2026 WL 673462, at *8 (E.D.N.Y. Mar. 10, 2026) (citing to *Fogel v. Wal-Mart de Mexico SAV de CV*, NO. 13-CV-2282 (KPF), 2017 WL 751155, at *17 (S.D.N.Y. Feb. 27, 2017); *City of Sterling Heights Police & Fire Ret. Sys. V. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 95 (S.D.N.Y. 2022)).

However, it is the case here that the timing of the stock sales seriously weakens any notion of scienter. *See id*. ("The narrower and correct rule statement is that these examples lose explanatory value the further they are from the alleged mis-statements, not that they should be rejected as a bright line rule.").

The Court next considers the alleged stock sales that occurred during the narrowed Class Period. The Court notes that other courts have found that "motive is adequately alleged where the plaintiffs allege that the defendants sold their own shares while at the same time misrepresenting corporate performance in order to inflate stock prices." *In re Refrco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 646 (S.D.N.Y. 2007)) Indeed, "[t]he Second Circuit has held that motive is adequately alleged where the defendants who made false statements inflating the value of shares sold tens of thousands of shares during the period that the allegedly defrauded customers were purchasing them." *Id*. at 646 (citation omitted). However, those circumstances are not present here where the stock sales alleged during the narrowed Class Period "comprise under 5% of the total sales during the SAC's original class period." *See* ECF No. 121 at 15. As such, these sales are relatively inconsequential in amount and not as unusual. *See Koplyay v. Cirrus Logic, Inc.*, 2013 WL 6233908, at *6 (S.D.N.Y. Dec. 2, 2013) (no motive where sales by executives "totaled less than $10 million"); *see also Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355 (finding sales of shares not unusual where they "constituted a similar (or lesser) proportion of shares sold by those defendants before the putative class period").

Defendants also argue these sales "were all made pursuant to pre-arranged 10b5-1 plans or to cover tax liabilities, which by definition 'could not be timed suspiciously' and are not 'unusual.'" *See* ECF No. 121 at 15. (citing *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355; *see also Damri v. LivePerson, Inc.*, 772 F. Supp. 3d 430, 468 (S.D.N.Y. 2025) ("automatic" stock sales to

cover "tax liabilities" not indicative of fraud.)). Suspicious timing of trading plans may give rise to an inference of scienter where "they were adopted during the Class Period." *Freudenberg v. E*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010). However, the 10b5-1 plans pre-existed the Class Period.

Further, terminating trading plans well before allegedly "significant drop[s]" in a company's share price does not demonstrate scienter. *In re CRM Holdings, ltd. Sec. Litig.*, 2021 WL 1646888, at *25 (S.D.N.Y. May 10, 2022) ("unusual " termination of plans insufficient to establish scienter). While Plaintiffs argue the termination of Defendants' trading plans are suspicious, there are not sufficient facts to support this. For one, the SAC only alleges when one Defendant terminated their trading plan. *See* SAC ¶ 286. The SAC conclusorily alleges that Woodworth "abruptly" terminated her 10b-1 trading plan but do not specify when she did so or why this is unusual. SAC ¶ 164. In any event, the Individual Defendants nonetheless "ceased trading more than six weeks before the alleged 'truth' was revealed, thus retaining Peloton stock despite its risk of declining in value." *See* ECF No. 126 at 3. Sales that take place "more than a month prior" to purported corrective disclosures are not "inherently suspicious." *Sun v. TAL Edu. Grp.*, 2023 WL 6394413, at *29 (S.D.N.Y. Sept. 29, 2023) (Carter, J.) (Collecting cases). Indeed, Defendants correctly provide that such behavior is not sufficiently unusual or suspicious because it suggests the Individual Defendants "did not 'rush [] to cash out before the [purported] finding of scienter.'" *See* ECF No. 121 at 16 (citing *Koplyay*, 2013 WL 62133908, at *5). Rather, the Individual Defendants stopped selling under their 10b-5 plans before the alleged fraud was revealed and continued to retain stock that declined in value. As such, Plaintiffs fail to

demonstrate that the Individual Defendants' relevant financial transactions were sufficiently unusual or suspicious to establish motive.

**b. Strong Circumstantial Evidence of Fraud**

Plaintiffs' SAC similarly fails to allege facts that provide "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns*, 493 F.3d at 99. The Second Circuit has "explained that '[s]cienter based on conscious misbehavior … requires a showing of deliberate illegal behavior, a standard met when it is clear that a scheme, viewed broadly, is necessarily going to injure.'" *New England Carpenters*, 122 F.4th at 49 (citing *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012) (quotation marks omitted)). "Recklessness, meanwhile, entails 'an extreme departure from the standards of ordinary care … to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id*. (citing *ECA & Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase CO.*, 553 F.3d 187, 198 (2d Cir. 2009) (quotation marks omitted)). Plaintiffs' SAC fails to meet these requirements.

Plaintiffs argue Defendants "knew – or [were], at minimum, reckless in not knowing— the true purpose for Peloton's 20% price cut." ECF No. 125 at 2. Plaintiffs argue the SAC "contains ample allegations that, when considered holistically (as they must be), raise a strong inference of scienter." *Id*. While Plaintiffs stress the importance of viewing the allegations holistically, they seem to disregard that where no motive or opportunity is shown, "the circumstancial evidence of conscious misbehavior 'must be correspondingly greater.'" *Arkansas Pub. Emps. Ret. Sys.*, 28 F.4th at 355 (citing *Kanit v. Eichler*, 264 F.3d at 142)). Plaintiffs argue that in this case because "the Second Circuit found that the very facts Defendant knew and has access to during the Class Period were what supported its finding that Defendants' statements

were false and misleading", "the scienter analysis is closely aligned with the analysis as to the misleading statements." *See* ECF No. 125 at 10 (citing *In re American Intern. Group. Inc. 2008 Securities Litigation*, 741 F. Supp. 2d 511, 533 (S.D.N.Y. 2010)) (quotations omitted). This reduction of the caselaw minimizes the PSLRA's "exacting" pleading standard. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). While certain allegations may contribute to establishing both, scienter and falsity are distinct elements. To hold that one establishes the other in certain circumstances "would lead to absurd results to collapse the falsity and scienter requirements." *See Puchtler v. Barclays PLC*, 2025 WL 887502, at *17 (S.D.N.Y. Mar. 21, 2025); *see also In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *7 (E.D.N.Y. Dec. 5, 2013) (noting that Federal Rule of Civil Procedure 9(b) and the PSLRA "require allegations as to the circumstances or reasons why the statements were fraudulent or misleading, and separate allegations as to the speaker's state of mind"). In any event, Plaintiffs fail to allege sufficient facts to establish strong circumstantial evidence of fraud for the reasons that follow.

First, Plaintiffs argue Foley "was the Company's CEO during the Class Period," and he "admitted to his role in the Bike's 20% price reduction when he said during the announcement 'we had the opportunity to do' the price cut which was 'absolutely offensive.'" ECF No. 125 at 2, 10 (citation omitted).[4] Second, Plaintiffs argue that Foley "received a steady stream of reports and had access to data showing that the Company was downing in inventory by August 2021."

---

[4] Plaintiffs argue that courts have found an inference of scienter where "an executive makes false or misleading statements about an initiative for which they were responsible or purport to know about." *See* ECF No. 125 at 10 (citing *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318 (S.D.N.Y. 2024) (finding scienter where defendants stated "we manage out inventory levels in a disciplined way" and "we watch inventory very closely"); *see also Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 351 (S.D.N.Y. 2015) (finding scienter where defendant held himself out "to the public as intimately knowledgeable")). However, the circumstances of the statement Foley made regarding the Bike's price cut are distinct and do not weigh as heavily in favor of scienter as in the cases Plaintiffs rely on, particularly given the distinction between an "offensive" and "defensive" price cut in this situation. *See, e.g.*, 2COA Op. at 18 n.4 ("a strategy could be both offensive and defensive" and question potentially "posed a false choice").

ECF No. 125 at 2. Plaintiffs further provide that "Defendants Woodworth and Lynch received and had access to reports and data reflecting that Peloton had months of excess inventory idling in shipping containers at ports, for which Peloton was incurring millions of dollars in demurrage fees." *Id*. Plaintiffs cite to multiple cases to argue that conscious misbehavior or recklessness can be pleaded by alleging defendants "knew facts or had access to information suggesting that their public statements were not accurate." *See* ECF No. 125 at 11-12 (internal quotation marks omitted) (citing to *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *16 (S.D.N.Y. Mar. 25, 2013); *see also In re Scholastic*, 252 F.3d at 76-77; *In re Solar Edge Techs., Inc. Sec. Litig.*, 2024 WL 4979296, at *16 (S.D.N.Y. Dec. 4, 2024)). However, as Defendants point out, these cases "sustained claims based on schemes to manipulate a company's overall financials—typically via 'channel stuffing,' i.e. inflating sales and earnings by misrepresenting inventory and demand." ECF No. 126 at 5. (citing in relevant part *In re SolarEdge Techs., Inc. Sec. Litig.*, 024 WL 4979296, at *7, *10 (channel stuffing hid that inventory "was growing"); *in re Scholastic*, 252 F.3d at 73-75 (defendants "delay[ed] disclosure" of figures impacting inventory to mask "downward trend" in profitability and inflate income); *City of Providence*, 2013 WL 1197755, at *5, *13 ("accounting gambit" to inflate earnings). These cases can be distinguished from this case where Defendants are not accused of channel stuffing or misrepresenting inventory levels or sales but rather of failing to acknowledge that inventory levels were "excessive" and triggered the Bike's price cut. Indeed, Plaintiffs concede that Peloton made certain relevant accurate disclosures regarding inventory, anticipated demand, and its financials.

Further, Defendants persuasively argue that "Plaintiffs cannot show that the alleged inaccuracies in the three remaining Challenged Statements represented highly unreasonable conduct given Peloton's contemporaneous, accurate, and detailed inventory and price

disclosures, including its deliberate and ongoing inventory investment strategy." ECF No. 121 at 17. Indeed, "Peloton's truthful disclosures and consistent strategy leading up to and during the Class Period contradict Plaintiffs' allegation that Peloton knew it had excess inventory in August 2021." ECF No. 121 at 2. In *Gabelli*, the Second Circuit found that the district court correctly concluded that Plaintiffs failed to adequately plead scienter in similar circumstances. *Gabelli Asset Fund v. Garrett Motion Inc.*, No. 23-668-CW, 2024 WL 1653451, at *3 (2d Cir. Apr. 17, 2024). The Court reasoned that "it was unlikely that [Defendant] believed it could deceive investors … when investors could easily evaluate such claims in light of the financial information in its public filings." *Id*. Further, Defendant "acknowledged the risks posed by its capital structure many times during the Class Period." *Id*. (internal citation omitted).

Similarly here, "[f]rom the beginning of the pandemic, Defendants quickly began reporting a long list of 'negative impact[s]' on Peloton, including unpredictable demand for its products, forecasting challenges, and difficulties anticipating inventory needs." ECF No. 121 at 17. "Peloton also accurately disclosed inventory in precise dollar amounts, which consistently grew before and during the Class Period." *Id*. at 17-18. Foley and Woodworth explained to investors that Peloton was building inventory "at a pace exceeding demand so that Peloton could improve order-to-delivery times, particularly leading into the busy holidays." *Id*. at 18. (internal quotations and alterations omitted).

Further, "Peloton also repeatedly warned investors that COVID's uncharted territory made projecting inventory needs and revenue more challenging." *Id*. at 3. This Court and the Second Circuit have already found that Defendants' expectations of strong demand were "consistent with Peloton's then-current expectations of further growth." 2COA Op. at 11. In all, "Peloton repeatedly disclosed that it was deliberately increasing its inventory levels to prevent

supply problems, to enhance Peloton's ability to meet expected demand, and to increase its share of the market." ECF No. 121 at 2. The fact that Defendants continued building inventory during the Class Period while also disclosing precise dollar and inventory amounts in SEC filings undermines any inference that Peloton believed it had excess inventory at the beginning of the Class Period. Just as in *Gabelli*, it is unlikely Defendants believed they could deceive investors given such contemporaneous disclosures and public filings. *See Gabelli Asset Fund v. Garrett Motion Inc.*, 2024 WL 1653451, at *3 (citing *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) ("It defies logic to conclude that executives who are seeking to perpetrate fraudulent information upon the market would make such fulsome disclosures.")). As such, Defendants arguments are availing: "Defendants made detailed and accurate disclosures regarding the same (and related) topics as the Challenged Statements: inventory, demand, and pandemic risks—allowing investors to reach their own judgments about Peloton's inventory strategy." ECF No. 126 at 4. These facts undermine Plaintiffs' theory of scienter, and when considering all facts holistically, Plaintiffs' allegations fail to establish highly unreasonable misconduct.

The CW allegations in the SAC also fail to "establish scienter because the CWs do not individually or collectively support the inference that any Individual Defendants believed Peloton had excess inventory in August 2021 or reduced the Bike's price for that reason." ECF No. 121 at 20. Plaintiffs argue that the CW accounts detail that the Individual Defendnats attended meetings where excess inventory issues were discussed and had access to reports that tracked inventory and sales. *See* ECF No. 125 at 19-20. However, "Defendants are not accused of misrepresenting inventory levels or sales—only of not acknowledging that inventory levels were 'excessive' and triggered the Bike price cut." ECF No. 126 at 5-6. Defendants persuasively

argue that inventory is only considered "excessive" by comparing it to anticipated demand, and Plaintiffs' "Opposition concedes that the Second Circuit deemed Peloton's statements about demand throughout the Class Period accurate." *Id*. at 6. Because Plaintiffs' fail to make the showing that any Individual Defendant "actually possessed information contradicting" the Challenged Statements, Plaintiffs cannot demonstrate any Individual Defendant believed Peloton's inventory levels were "excessive" leading up to the holiday season. *See* ECF No. 121 at 21; *see also* ECF No. 126 at 6 (citing *Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016) (that defendants "monitored the sales and returns" insufficient to establish hat "defendants actually possessed information contradicting" public statements). Indeed, "Plaintiffs' Opposition concedes that none of the CWs accused Defendants of holding information that would be viewed contrary to the Challenged Statements." ECF No. 126 at 5.

Plaintiffs' remaining arguments similarly fail.[5] Plaintiffs point to Defendants' terminations and argue they "'suggest[] a higher level of wrongdoing approaching recklessness or even conscious malfeasance.'" *See* ECF No. 125 at 13 (citing *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632-33 (S.D.N.Y. 2014); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016) (suspiciously-timed resignations support the inference)). However, as Defendants argue, Plaintiffs do not allege facts "that those departures related to accusations of fraud." *See* ECF No. 126 at 8. As such, the terminations themselves are not sufficiently strong to

[5] For the sake of thoroughness, the Court will briefly address Plaintiffs argument that Defendants are raising a truth-on-the-market defense. Such a defense is based on the idea that "the market was already aware of the truth regarding defendants' misrepresentations," such that "class members could not have relied on those misstatements in choosing to buy stock." *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 485 (2d Cir. 2018). However, as Defendants provide, they are not arguing "reliance, materiality, or that investors knew the 'truth' from other sources." ECF No. 126 at 7. Rather, "Defendants argue that because they gave investors sufficient information to 'easily evaluate' the risks of Peloton's deliberate inventory growth, Defendants lacked fraudulent intent." *Id.* (citing *Gabelli*, 2024 WL 1653451, at *3). *See also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 & n.62 (2d Cir. 2014) (rejecting argument that defendants impermissibly argued 'truth on the market defense and affirming holding as part of holistic assessment that defendant's "specific disclosures' "undercut the inference" that it was "attempting to conceal" the truth).

support an inference of scienter. *See Damri v. LivePerson, Inc.*, 772 F. Supp. 3d 430, 469 (S.D.N.Y. 2025) (terminations "without more, do not support" scienter). Plaintiffs argue Defendants had reason to focus on Peloton's inventory levels given that "Peloton's Bike and treadmills accounted for 80% of the Company's revenue" and that "it as neither difficult nor complex for Defendants to determine the true, undisclosed facts" given how quickly the new CEO discovered the company had excess inventory. *See* ECF No. 125 at 13-14. Plaintiffs argue that because Defendants' misstatements concerned a significant disruption to a key part of their business, it is unlikely they did not know the truth when their statements were made. *See* ECF No. 125 at 14. (citations omitted). However, as Defendants point out, "whether Peloton's inventory levels were 'excessive' hinged on anticipated future holiday demand that had not yet occurred." *See* ECF No. 126 at 7. As a result of the COVID-19 pandemic, anticipating such demand was more uncertain. As such, this is not enough to establish highly unreasonable conduct. In any event, the Second Circuit has found in similar circumstances that when considering whether "Defendants acted with scienter, it is not enough that it took a period of years [] to acknowledge its significant accounting errors." *See New England Carpenters*, 122 F.4th at 49.

Considering the allegations holistically, Plaintiffs' theory of scienter fails in that it is not supported by strong circumstantial evidence of fraud. Plaintiffs contend that Defendants "hoped that a 20% price cut would successfully reduce the Company's inventory glut," prompting defendants to take gamble that the risk of excessive inventory would resolve itself following the alleged misstatements. However, the SAC does not provide sufficient facts to support this theory. This theory is also undermined by the lack of financial motive and Peloton's accurate disclosures reducing revenue projections a few months later. Further, courts have found a lack of scienter

where Defendants suffered business reversals due to dislocations caused by the COVID-19 pandemic. *See Optimum Strategies Fund I, LP v. U.S. Oil Fund, LP*, 2023 WL 2526394, at *13 (D. Conn. Mar. 15, 2023) (finding no scienter where "in the fact of an unprecedented global pandemic, Defendants were making disclosures in uncharted waters."); *see also In re Bristol-Myers Squibb Co. CVS Sec. Litig.*, 658 F. Supp. 220, 234 (S.D.N.Y. 2023) (finding no scienter because the "more compelling inference to be drawn" is that Defendants experienced "setbacks" in connection with "an unprecedented pandemic"). As previously mentioned, "whether Peloton's inventory levels were 'excessive' hinged on anticipated future holiday demand that had not yet occurred." ECF No. 126 at 7. Plaintiffs' allegations fail to rise to the level of recklessness to establish strong circumstantial evidence of fraud. While these allegations may allege negligence, "[n]egligence, even in a 'heightened form,' is not sufficient to allege scienter." *New England Carpenters*, 122 F.4th at 49 (citing *Novak v. Kansas*, 216 F.3d 300, 312 (2d Cir. 2000)). This is even more so in cases where "motive is not apparent," thereby requiring that "the strength of the circumstantial allegations [] be correspondingly greater." *See Gabelli Asset Fund. V. Garret Motion Inc.*, 2024 WL 1653451, at *2.

Plaintiffs fail to allege a strong inference of scienter because innocent intent is the more compelling inference here. *See id.* at 48 ("the inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. As Defendants argue, "taking all these disclosures together, the more plausible inference is that Peloton genuinely believed that building inventory was important to enable it to meet increased demand and make its products more accessible to the public." ECF No. 121at 3. As such, "[a]ny alleged deficiencies in the Challenged Statements were the inadvertent result of the difficulty projecting future supply and demand, not a result of

fraudulent intent." *Id*. Accordingly, Plaintiffs fail to allege a strong inference of scienter as to the Individual Defendants. Further, because Plaintiffs fail to "plead scienter with respect to any" of the Individual Defendants and "assert no specific corporate scienter allegations," the scienter allegations against Peloton in Count I also fail. *See Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *13 (S.D.N.Y. Sept. 27, 2021).

## II. The Court Declines to Address Loss Causation

Defendants argue that the SAC should separately be dismissed for failure to allege loss causation "because Plaintiffs cannot connect their claimed loss to the Challenged Statements." *See* ECF No. 121 at 3. Defendants reasons that "[t]he Company's stock price ultimately dropped because Peloton reduced its future financial forecasts, not because of allegedly corrective disclosures concerning inventory levels." *See id*. Plaintiffs argue to the contrary that the SAC adequately pleads loss causation because Peloton's stock price plummeted following revelations that Peloton had excess inventory. *See* ECF No. 125 at 2, 21-24. Because the Court finds that Plaintiffs fail to adequately plead scienter, the Court need not reach the issue of loss causation. *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 172 (S.D.N.Y. 2015) (collecting cases).

## III. Lead Plaintiff Lacks Standing

The Court agrees with Defendants that Lead Plaintiff Robeco lacks standing to sue because it's "latest share purchase was on March 5, 2021—before the narrowed Class Period." *See* ECF No. 121at 25. Plaintiffs argue in response that Plaintiff City of Hialeah has standing under the narrowed Class Period and therefore "has standing to assert claims on behalf of the class where a lead plaintiff may not." ECF No. 125 at 24. As such, Plaintiffs argue any standing issues should not bear on dismissal. *See id*. Because the Court finds Plaintiffs' fail to adequately

allege scienter, the Court need not reach the issue of whether Lead Plaintiff Robeco's lack of standing and Plaintiffs failure to move to substitute Hialeah as Lead Plaintiff requires dismissal.

**IV. Section 20(a) and 20A Claims**

Plaintiffs also allege control person liability under Section 20(a) of the Exchange Act. "Section 20(a) of the Exchange Act provides that individual executives, as 'controlling persons' of a company, are secondarily liable for their company's violations of the Exchange Act," *Emps.' Ret. Sys. Of Gov't of the Virgin Islands v. Blanford*, 794 F,3d 297, 305 (2d Cir. 2015) (alteration omitted) (quoting 15 U.S.C. § 78t(a)). "Actions under [§ 20(a)] require an independent violation of the Exchange Act." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 152 (2d Cir. 2021). As Plaintiffs have failed to adequately plead their § 10(b) claim, the claims under §20(a) also fail as a matter of law. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996),; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Accordingly, Count II of the SAC regarding Section 20(a) claims against the Management Defendants is hereby **DISMISSED**. On appeal, the Second Circuit found any insider trading claims under § 20A of the Exchange Act were waived given Plaintiffs did not raise any arguments challenging dismissal of those claims. *See* 2COA Op. at 21 n.5. In any event, such insider trading allegations would fail here because Plaintiffs fail to plead an adequate predicate § 10(b) claim. *See In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 364 (S.D.N.Y. 2005). As such, Count IV of the SAC is also hereby **DISMISSED**.

**V. Leave to Amend**

The Court considers whether to grant Plaintiff leave to amend her complaint. Federal Rule of Civil Procedure 15(a)(2) requires courts provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); s*ee also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,

200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). A Court need not grant leave to amend where amendment would be futile. *See Olson v. Major League* Baseball, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020) (leave may be denied where amendment would be futile). Plaintiffs note that "[t]he Court has not previously addressed the Complaint's scienter allegations or considered them in light of the Second Circuit's decision finding actionable misstatements." ECF No. 125 at 25, n.11. As such, Plaintiffs request leave to amend in the event the Court grants Defendants' motion. *See id*. While Plaintiffs have failed to "identif[y] any amendments that would alter the Court's analysis," it may be plausible that additions to the complaint may allege sufficient facts. *Bellocchio v. Garland*, 614 F. Supp. 3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at *6 (S.D.N.Y. July 21, 2022). Although the Court **DECLINES** to grant Plaintiffs leave to amend, Plaintiffs may file a motion for leave to file a third amended complaint identifying any amendments that may cure the deficiencies here. Plaintiffs should include the proposed third amended complaint with such motion.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED.** The Parties' requests for oral argument are **DENIED**. Plaintiffs' motion for leave to file a third amended complaint is due by **September 28, 2026**. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 120.

**SO ORDERED.**

**Dated: August 27, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**