**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBECO CAPITAL GROWTH FUNDS SICAV – ROBECO GLOBAL CONSUMER TRENDS and CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, WILLIAM LYNCH, and JILL WOODWORTH,<br><br>Defendants. | 21-CV-09582 (ALC) (OTW)<br><br>The Honorable Andrew L. Carter<br><br>The Honorable Ona T. Wang<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND PURSUANT TO FED. R. CIV. P. 15(a)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. SUMMARY OF PROCEDURAL HISTORY .......... 3

III. LEGAL STANDARD .......... 5

IV. PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND .......... 7

A. Plaintiffs' Motion Is Timely, Made in Good Faith, and Will Not Cause Undue Prejudice to Defendants .......... 7

B. The Proposed Amendment Is Not Futile Because It Adds Critical, New Factual Allegations and Adequately Pleads Violations of the Securities Laws .......... 9

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Agerbrink v. Model Serv. LLC*,
155 F. Supp. 3d 448 (S.D.N.Y. 2016)........8

*Aquino v. Uber Techs., Inc.*,
2023 WL 8183802 (S.D.N.Y. Nov. 27, 2023)........9

*In re Barrick Gold Sec. Litig.*,
2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015)........5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........9

*City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*,
153 F.4th 288 (2d Cir. 2025)........1, 4

*Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*,
2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020)........8

*Contrera v. Langer*,
314 F. Supp. 3d 562 (S.D.N.Y. 2018)........6

*Deulina v. Peloton Interactive, Inc.*,
No. 1:21-cv-10266-ALC (S.D.N.Y. Dec. 2, 2021)........3

*Freidus v. Barclays Bank PLC*,
734 F.3d 132 (2d Cir. 2013)........5

*Grant v. Citibank (S. D.), N.A.*,
2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010)........6

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)........9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)........5, 6, 7

*In re Lottery.com, Inc. Sec. Litig.*,
765 F. Supp. 3d 303 (S.D.N.Y. 2025)........5

*Margel v. E.G.L. Gem Lab Ltd.*,
2010 WL 445192 (S.D.N.Y. Feb. 8, 2010)........9

*McGee v. Doe*,
568 F. App'x. 32 (2d Cir. 2014)........8

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001)....................9

*In re Moody's Corp. Sec. Litig.*,
599 F. Supp. 2d 493 (S.D.N.Y. 2009)....................6

*Okla. Firefighters Pension & Ret. Sys. v. Musk*,
779 F. Supp. 3d 396 (S.D.N.Y. 2025) (Carter, J.) ....................13

*Osher v. JNI Corp.*,
183 F. App'x 604 (9th Cir. 2006) ....................6

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012)....................10

*Peloton Interactive, Inc. v. Flexport Int'l LLC*,
No. 24-19 (Fed. Mar. Comm'n Sept. 9, 2025)....................11, 12

*Ragan v. AppHarvest Inc.*,
2022 WL 22863367 (S.D.N.Y. July 22, 2022) ....................8, 9

*Regency NYC, Inc. v. Atkinson*,
2023 WL 7529791 (S.D.N.Y. Nov. 13, 2023)....................7

*SEC v. Rayat*,
2022 WL 3656314 (S.D.N.Y. Aug. 24, 2022)....................6

*Shiyao v. Xiao-I Corp.*,
2026 WL 2279623 (S.D.N.Y. Aug. 7, 2026)....................7

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
341 F.R.D. 542 (S.D.N.Y. 2022) ....................9

*Starr v. Sony BMG Music Ent.*,
592 F.3d 314 (2d Cir. 2010)....................10

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................10

*Venkataraman v. Kandi Techs. Grp., Inc.*,
2022 WL 4225562 (S.D.N.Y. Sep. 13, 2022)....................10

*Vinci Brands LLC v. Coach Servs., Inc.*,
2024 WL 4370841 (S.D.N.Y. Oct. 2, 2024)....................8

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011)....................5

*In re Winstar Commc'ns*,
2006 WL 473885 (S.D.N.Y. Feb. 27, 2006)....................5

*In re Zeta Glob. Holdings Corp. Sec. Litig.*,
2026 WL 1971169 (S.D.N.Y. July 8, 2026)....................13

**RULES**

Fed. R. Civ. P. 15(a)(2)....................5, 6

Plaintiffs Robeco Capital Growth Funds SICAV – Robeco Global Consumer Trends ("Robeco"), City of Hialeah Employees' Retirement System ("Hialeah"), and Le Grace Tang ("Tang," and together with Robeco and Hialeah, the "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Leave to Amend Pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion") and the Court's August 27, 2026 Opinion and Order dismissing (Dkt. No. 129) (the "Motion to Dismiss Order") the Second Amended Consolidated Class Action Complaint (Dkt. No. 92) (the "Complaint"). Plaintiffs hereby seek to amend the claims asserted in the Complaint against Defendants Peloton Interactive, Inc. ("Peloton"), John Foley, William Lynch, and Jill Woodworth (collectively, "Defendants") and to file the proposed amended complaint filed concurrently herewith (the "Proposed Amended Complaint").

## I. <u>INTRODUCTION</u>

Plaintiffs' Proposed Amended Complaint pleads new facts that address the issues raised in the Court's Motion to Dismiss Order and establish Defendants' scienter related to the false and misleading statements that the Second Circuit sustained. The Proposed Amended Complaint pleads the same theory of liability, adds no new defendants, and does not seek to expand the Class Period or the Class definition. Plaintiffs' narrowly focused amendment would not unduly prejudice Defendants. Further, the amendment is made in good faith and is based on new facts discovered through Lead Counsel's continuing and thorough investigation into the facts underlying this action.

The Court for the first time issued a decision addressing Defendants' scienter on August 27, 2026, after the Second Circuit vacated in part the Court's September 30, 2024 motion to dismiss order and stated that the Court "may consider whether the plaintiffs have plausibly alleged scienter." *City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 302 (2d Cir. 2025). In their November 17, 2025 opposition to Defendants' subsequent, renewed motion to dismiss, Plaintiffs requested leave to amend in the event of a dismissal. Dkt. No. 125 at 25 n.11.

Plaintiffs now respectfully move the Court for leave to file the Proposed Amended Complaint within the time specified by the Court in the Motion to Dismiss Order. *See* Dkt. No. 129 at 24. Plaintiffs have not caused undue delay or engaged in dilatory behavior in seeking leave to amend the Complaint.

Nor would Plaintiffs' proposed amendment be futile. As described below, the Proposed Amended Complaint directly addresses the basis upon which the Court dismissed the Complaint and pleads additional facts creating a strong inference of Defendants' scienter sufficient to survive a motion directed at the pleading. The Proposed Amended Complaint contains additional detailed allegations, including accounts from additional confidential witnesses, regarding reports that Foley, Lynch, and Woodworth received showing that inventory was far in excess of what the Company needed to meet current and anticipated demand and could afford to keep on hand. The Proposed Amended Complaint also contains findings of facts from an administrative proceeding showing that Defendants knew the magnitude of the inventory crisis facing Peloton at least as of mid-2021. The findings of fact of the Federal Maritime Commission, reached after a review of a substantial discovery record, reveal that Peloton's inventory glut was so severe that it was exacerbating a worldwide supply chain crisis. The findings of fact, based on internal Peloton documents and deposition testimony, also describe how Peloton acknowledged to third parties that it was "keenly aware" of how much the inventory excess was costing the Company, causing the Company to halt receiving new products ***before*** the August 26, 2021 price cut. These new facts regarding the state of inventory at Peloton raise a strong inference that Defendants cut the price of the bike to offload inventory, which is more plausible than any inference that Defendants did so to "democratize fitness." Despite Defendants' undeniable and well-documented knowledge of the foregoing, the Proposed Amended Complaint alleges that Defendants misleadingly assured

investors that the risk of Peloton's inventory levels becoming excessive was merely ***hypothetical*** and that the 20% discount to Peloton's flagship product, the Bike, was not a defensive effort to offload such excess inventory.

Since Plaintiffs were diligent in seeking leave to amend and since the Proposed Amended Complaint is based on new facts that create a strong inference of Defendants' scienter, addressing the deficiencies raised in the Court's Motion to Dismiss Order, the Court should grant leave to file the Proposed Amended Complaint.

## II. SUMMARY OF PROCEDURAL HISTORY

On November 18, 2021, Hialeah filed the first complaint in this action, pleading violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act. Dkt. No. 1. The November 18, 2021 complaint alleged that Peloton and certain of its senior executives made false or misleading statements to investors by overstating the post-Covid demand for its fitness products and concealing that Peloton's excess inventory far outpaced demand for its products and that the Company suffered a material weakness in its internal controls over financial reporting. *Id*. On December 2, 2021, Anastasia Deulina filed a virtually identical complaint in a separate action. *See* Complaint, *Deulina v. Peloton Interactive, Inc.*, No. 1:21-cv-10266-ALC (S.D.N.Y. Dec. 2, 2021). On May 5, 2022, the Court consolidated the actions and appointed Robeco as Lead Plaintiff and appointed Grant & Eisenhofer P.A. as Lead Counsel. Dkt. No. 42. And on May 18, 2022, the court entered an order granting, *inter alia*, Lead Plaintiff Robeco leave to file a consolidated amended complaint. Dkt. No. 46.

On June 25, 2022, Lead Plaintiff Robeco filed the Amended Consolidated Class Action Complaint ("Amended Consolidated Complaint") alleging, *inter alia*, additional facts regarding Defendants' scienter and reports from former employees. Dkt. No. 51. On November 3, 2022, the parties completed their briefing on the motion to dismiss the Amended Consolidated Complaint.

On March 30, 2023, the Court dismissed the Amended Consolidated Complaint holding that the alleged misstatements were corporate optimism and that the complaint did not allege sufficient facts to demonstrate that the alleged misstatements were false when made; the Court did not reach the issue of Defendants' scienter. Dkt. No. 88 at 1-2, 25-26. The Court granted leave to amend the Amended Consolidated Complaint (*id.*), and Plaintiffs filed the Complaint on May 6, 2023, expanding the Class Period to include additional corrective disclosures, including accounts from 24 additional former employees of Peloton, and providing additional information about the falsity of Defendants' statements and their scienter, including data showing that Peloton's inventory far exceeded the demand for its products (Dkt. No. 92). On September 30, 2024, after the parties fully briefed the motion to dismiss the Complaint, the Court again dismissed the action, with prejudice, on the basis that the Complaint did not allege any false and misleading statements. Dkt. No. 108 at 1-2, 24-26.

On August 27, 2025, the Second Circuit partially affirmed and vacated the Court's September 30, 2024 motion to dismiss order. *Peloton*, 153 F.4th at 302. In its opinion, the Circuit found that the Complaint adequately alleges that Defendant John Foley's August 26, 2021 statement to investors describing the purpose of Peloton's 20% price cut to its Bike was actionably false because the price cut was ***not*** "absolutely offensive," but rather a defensive move intended to unload excess inventory. *Id.* at 300-01. The Second Circuit further held that Defendants' warnings in Peloton's August 26, 2021 Form 10-K and November 4, 2021 10-Q of hypothetical, future "risks" were actionable as misleading because excess inventory was ***not*** a future risk, but rather a present reality that had already forced the Company to slash the Bike's price to unload product. *Id.* at 301. The Second Circuit remanded the case and instructed that the Court "may consider whether the plaintiffs have plausibly alleged scienter." *Id.* at 302.

On October 15, 2025, Defendants filed their renewed motion to dismiss the Complaint (Dkt. No. 121), and on November 17, 2025, Plaintiffs filed their opposition to the motion to dismiss and diligently requested that the Court grant leave to amend in the alternative. Dkt. No. 125. On December 10, 2025, Defendants filed their reply in support of their motion to dismiss. Dkt. No. 126.

On August 27, 2026, this Court ruled for the first time on the issues of Defendants' scienter as to the false and misleading statements that the Second Circuit has sustained. Dkt. No. 129. The Court held that the Complaint did not adequately plead scienter and granted Plaintiffs leave to file a motion seeking leave to file the Proposed Amended Complaint. *Id.* Plaintiffs now respectfully move the Court to allow the Proposed Amended Complaint, which is being filed concurrently herewith.

## III. LEGAL STANDARD

Courts apply Rule 15(a)(2)'s liberal standards in determining whether to grant leave to amend. *See In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 366 (S.D.N.Y. 2025) (citing rule 15's liberal standard and granting leave to file fourth amended complaint based on discovery of new facts); *In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, at *5, *16 (S.D.N.Y. Apr. 1, 2015) ("[L]eave to amend should be freely given."). Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140-42 (2d Cir. 2013); *In re Winstar Commc'ns*, 2006 WL 473885, at *1 (S.D.N.Y. Feb. 27, 2006). This is consistent with the Second Circuit's "strong preference" for the "'permissive'" and "liberal standard set forth in Rule 15." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) ("This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.").

Under Rule 15(a)(2), the court may deny a motion for leave to amend only on grounds of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *SEC v. Rayat*, 2022 WL 3656314, at *5 (S.D.N.Y. Aug. 24, 2022). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment bears the burden of showing prejudice, bad faith, and futility of the amendment." *Id.* (quoting *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018)); *see also Grant v. Citibank (S. D.), N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010).

In light of the PSLRA's pleading standards, "leave to amend should be granted liberally" in securities actions. *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009); *see also In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (citing importance of liberal amendment standards in light of PSLRA's pleading standards and allowing filing of third amended complaint); *Osher v. JNI Corp.*, 183 F. App'x 604, 605 (9th Cir. 2006) ("Leave to amend is to be granted with extreme liberality . . . because the heightened pleading requirements imposed by the PSLRA are so difficult to meet.").

The Second Circuit has explained that it is particularly important to grant leave to amend in complex securities fraud cases where, as in this case, courts have not previously issued a "definitive ruling" on the same grounds that form the basis of the court's dismissal. *See Loreley*, 797 F.3d at 190-91 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Highlighting the importance of judicial resolution in complex cases, the Second Circuit stated:

> The present case combines a complex commercial reality with a long, multi-prong complaint. In such situations, pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute. As discussed in Part I, *supra*,

> dismissal was partly based on the district court's determination that [p]laintiffs' fraud allegations raised neither plausible inferences of material misrepresentations nor strong inferences of scienter. These determinations entail judgment calls on which reasonable minds can differ in a not insignificant number of cases. . . . The district court's rejection of [p]laintiffs' position that the strength-of-inference requirements had been met by the facts set forth in the original complaint was, without more, insufficient reason to bar [p]laintiffs from repleading.

*Id.* (citations and quotations omitted).

## IV. PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

### A. Plaintiffs' Motion Is Timely, Made in Good Faith, and Will Not Cause Undue Prejudice to Defendants

Plaintiffs' motion for leave to amend should be granted because they have not caused delay but have brought this motion in accordance with the Court's schedule, move in good faith in light of newly discovered facts, and amendment does not unduly prejudice Defendants as the new facts therein are narrowly focused and are relevant to Defendants' scienter.

***First***, Plaintiffs have not delayed. Plaintiffs diligently sought leave to amend in their first briefing to the Court following the Second Circuit's decision and now seek leave to amend in accordance with the Court's schedule in its Motion to Dismiss Order, which is the first time the Court issued an order on issues of scienter and standing. *See Shiyao v. Xiao-I Corp.*, 2026 WL 2279623, at *30 (S.D.N.Y. Aug. 7, 2026) (finding leave to file third amended complaint warranted where "ruling is the first time [l]ead [p]laintiff has been apprised of the pleading deficiencies with respect to" specific issues).

***Second***, this motion to amend is not brought in bad faith. In this Circuit "[t]he party opposing the motion to amend bears the burden of showing futility, bad faith, undue delay or undue prejudice." *Regency NYC, Inc. v. Atkinson*, 2023 WL 7529791, at *2 (S.D.N.Y. Nov. 13, 2023). Plaintiffs have alleged new factual information, based on Lead Counsel's continuing investigation into the underlying facts of this case, in an attempt to cure the deficiencies cited by the Court in

the Motion to Dismiss Order and demonstrate the actionability of their claims. *Vinci Brands LLC v. Coach Servs., Inc.*, 2024 WL 4370841, at *3, *10 (S.D.N.Y. Oct. 2, 2024) (granting leave to file a third amended complaint that added newly discovered factual allegations). These allegations were uncovered through diligent and resource-intensive investigation (especially given the fact that discovery has been stayed in this action for years pending several motions to dismiss and one appeal). Plaintiffs' and their counsel's steadfast commitment to investigating and prosecuting this action and bringing new facts to the Court's attention in the Proposed Amended Complaint demonstrate their good faith. Plaintiffs have also devoted considerable effort to conforming the Proposed Amended Complaint to the previous orders of this Court and the appellate court by eliminating dismissed claims, defendants and statements.

***Finally***, there is no undue prejudice to Defendants. Under Second Circuit law, an amendment only unduly prejudices a non-moving party if the assertion of the new claim or defense "would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] (ii) significantly delay the resolution of the dispute." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016). Moreover, "the prospect of spending more time, effort, or money on litigation . . . does not render an amended complaint unduly prejudicial." *Ragan v. AppHarvest Inc.*, 2022 WL 22863367, at *1 (S.D.N.Y. July 22, 2022); *see also McGee v. Doe*, 568 F. App'x. 32, 40 (2d Cir. 2014). Rather, "[c]entral to this analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of the new claim." *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, 2020 WL 5089444, at *3, *8 (S.D.N.Y. Aug. 28, 2020) (granting leave to file a third amended complaint).

Here, the Proposed Amended Complaint asserts no new claims, legal theories, or defendants, and instead narrows and refines the allegations by reducing the number of allegedly

false and misleading statements and omissions, eliminating certain defendants and claims, and shortening the Class Period to less than six months. The Proposed Amended Complaint only provides further factual allegations insofar as they are necessary to address the issues raised by the Court in the Motion to Dismiss Order. Specifically, the amendment adds new facts that support the strong inference that Defendants made the false and misleading statements deemed actionable by the Second Circuit with scienter. Moreover, "[d]efendants will suffer no cognizable prejudice from the amendment," because having to file a new motion to dismiss in response to the Proposed Amended Complaint is not unduly prejudicial. *AppHarvest*, 2022 WL 22863367, at *1.

### B. The Proposed Amendment Is Not Futile Because It Adds Critical, New Factual Allegations and Adequately Pleads Violations of the Securities Laws

Permitting Plaintiffs to amend the Complaint to incorporate the new factual allegations and refine the claims in light of the Court's Motion to Dismiss Order will not be futile. Leave to amend may be denied as futile "only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also Aquino v. Uber Techs., Inc.*, 2023 WL 8183802, at *4 (S.D.N.Y. Nov. 27, 2023). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010); *see also Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 550 (S.D.N.Y. 2022).

Leave to amend should be granted when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing whether the proposed complaint states a claim" for the purpose of determining whether amendment would be futile, courts consider "'the proposed amendment[s] . . . along with the

remainder of the complaint' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (quoting *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 323 n.3 (2d Cir. 2010)).

Here, Plaintiffs' proposed amendment is not futile. As an initial matter, the allegations are predicated on the same viable legal theory that the Second Circuit sustained with respect to Defendants' false and misleading statements to investors about the extent of the excess inventory plaguing the Company during the Class Period. The Proposed Amended Complaint is the first opportunity that Plaintiffs have had to add new particularized facts uncovered during Lead Counsel's ongoing investigation relevant to Defendants' scienter since the Second Circuit clarified that certain of Defendants' misleading statements during the Class Period are actionably false.

Indeed, this Court's sole basis for recently dismissing the Complaint for a second time was that it failed to plausibly allege Defendants' scienter. Dkt. No. 129. The amendment alleges specific facts that raise a strong inference of Defendants' scienter that is at least as compelling as any opposing inference. The Proposed Amended Complaint alleges facts that belie Defendants' arguments that Peloton's excess inventory was either unknown to Defendants or merely no more than necessary to enhance logistical efficiency for an upcoming holiday season. The Proposed Amended Complaint alleges myriad particularized factual allegations that contradict these arguments and must be accepted as true and considered holistically when drawing inferences as to Defendants' scienter. *See Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, at *4 (S.D.N.Y. Sep. 13, 2022); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 309 (2007). Specifically, the Proposed Amended Complaint alleges:[1]

---

[1] All references to ¶ __ are to the Proposed Amended Complaint.

- Additional allegations from former employees at Peloton during the Class Period. FE5, who worked with Peloton's Inside Sales Team, stated that the August 2021 promotion was pursued to drive sales and to get rid of excess inventory. ¶ 46. Additionally, FE32, who worked as Site Manager of the Perris, California facility, VP of Operations for the Perris facility, and Senior Director of the West Coast for Peloton, stated that they met with Chief Supply Chain Officer, Jonathan Adee, quarterly and discussed Peloton's inventory and demand. ¶¶ 110-11. FE32 added that Adee reported his findings from these meetings to Foley, Lynch, and Woodworth and that Adee told FE32 personally that he sent reports to Foley, Lynch, and Woodworth. *Id*. FE32 reported that Foley was close to inventory and knew that there was a lot of excess inventory at or around the time of the August 2021 price cut and that Peloton had so much excess inventory that they did not know what to do with the bikes. ¶¶ 113-14. FE32 added that Peloton opened a special site in Hesperia, California because of excess inventory and returns. ¶ 113. FE33, who worked with the Product Analytics team, met with Chief Operating Officer, Thomas Cortese, on a bi-weekly basis, confirmed that in 2021, Peloton started offering various price reductions and promotions for the purpose of clearing excess inventory. ¶¶ 115-17. FE34, who worked as a Revenue Accountant reported that each month, their team would review a revenue spreadsheet showing actual revenue and forecasted revenue line-by-line with Woodworth and Chief Accounting Officer, Allen Klingsick and that based on information shared in those meetings, Woodworth knew that Peloton's revenue was declining. ¶ 119. FE34 further confirmed that information from the variance analysis meetings would have rolled up to Foley and Lynch. *Id.*

- That contrary to building inventory to enhance logistical capabilities, Defendants were aware, and discussed with third parties, that the inventory backlog was unplanned, costly and was creating a supply chain crisis. *See*, *e.g.*, ¶¶ 150-60.

- Findings of fact (the "Flexport Findings of Fact") in a recent proceeding before the Federal Maritime Commission, which document the lack of capacity and inability to receive containers due to backlogs at Peloton's largest warehouses beginning in early 2021 (¶¶ 4, 151), Peloton's knowledge of, and internal discussions regarding, the magnitude of costs, including $12,000 per day in demurrage fees, associated with a known inventory glut (¶ 152), and Peloton's own contribution to nationwide supply chain disruptions due to its inability to unload containers of product (¶ 159). *See* Initial Decision, *Peloton Interactive, Inc. v. Flexport Int'l LLC*, No. 24-19 (Fed. Mar. Comm'n Sept. 9, 2026). The Flexport Findings of Fact further show that on June 22, 2021, Peloton told Flexport that its Perris facility was running into limited to zero capacity again and to halt all inbounds for two days and Peloton ultimately instituted a "blackout" period in which two warehouses ceased receiving shipments completely in late June/early July 2021. ¶ 153. Also in late June 2021, Flexport advised Peloton that certain storage facilities, yard storage and a trucking company warehouse were maxed out with containers then in storage. *Id.*

- That beginning on July 21, 2021, and continuing into August 2021, Flexport contacted Peloton to assure that Peloton was aware, in detail, that Peloton cargo

was accumulating in storage yards and not gated out at facilities in the Los Angeles area for months, as well as the number of containers still expected to arrive. ¶¶ 155-56.

- That by August 12, 2021, just two weeks before announcing the August 2021 price cut, Peloton halted all inbounds of inventory to Perris again due to lack of capacity and the ongoing build-up of unneeded inventory. ¶ 158.

- That in response to Flexport emailing Peloton's operations team and stating that 51 containers of Peloton's exercise equipment had been delivered to and were just sitting at Peloton's Ingram Micro facility and had already accrued accessorial costs of ***$400,000*** (¶ 156), Peloton's former Director of North American Logistics, David Baitman, responded that ***Peloton was "aware of the issue"*** and "***keenly aware of the costs***" (¶ 157).

- That issues were reported by Flexport and Expeditors at many Peloton facilities other than the Perris facility, with reports of demurrage fees incurred when Expeditors could not pull product from the ports and reports of Peloton monopolizing chassis due to its inability to return containers because of overfilled warehouses which caused it to singlehandedly contribute to the global chassis shortage. ¶ 160. Flexport emailed Peloton in July 2021 that containers sitting out of port for an extended period of time reduce the utilization and in turn contribute to the global equipment shortage. *Id*. In its initial decision, the Federal Maritime Commission found that "Peloton contributed to the chassis shortage because it had an influx of a massive number of containers coming in for which there was no room in its warehouse…as a result at any given point Peloton had hundreds of containers sitting on chassis that could not be returned." *Id*.

- That Peloton incurred $20 million in detention and demurrage fees in the second half of 2021 alone due to its failure to receive inbound inventory at its warehouses because warehouses were at maximum capacity with no inventory leaving due to declining demand. ¶ 182.

- That Peloton hosted a mandatory townhall meeting for all employees for the purpose of discussing declining demand at the end of February 2021 during which Foley discussed how demand was decreasing for the bikes and that customer returns had increased because everything was opening up again, *i.e*., pandemic restrictions were lessening. ¶ 91.

These facts, coupled with other particularized allegations contained in the Proposed Amended Complaint, establish a strong inference of scienter at least as plausible as any competing inference proposed by Defendants. In fact these facts completely undercut any argument that the price cut was anything but an effort to unload excess inventory or that inventory build-up was

planned or purposeful. *See In re Zeta Glob. Holdings Corp. Sec. Litig.*, 2026 WL 1971169, at *10 (S.D.N.Y. July 8, 2026) ("At this stage of the litigation . . . a 'tie on scienter goes to the plaintiff.'") (quoting *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 779 F. Supp. 3d 396, 422 (S.D.N.Y. 2025) (Carter, J.)).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to file the Proposed Amended Complaint.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Karin E. Fisch*
Karin E. Fisch
Cecilia E. Stein
Mica A. Cocco
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
kfisch@gelaw.com
cstein@gelaw.com
mcocco@gelaw.com

*Lead Counsel for Lead Plaintiff Robeco Capital Growth Funds SICAV – Robeco Global Consumer Trends and Proposed Lead Plaintiff Le Grace Tang*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Hannah Ross (HG5180)
Avi Josefson (AJ3532)
Kelly Hogan (6194526)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

hannah@blbglaw.com
avi@blbglaw.com
kelly.hogan@blbglaw.com

-and-

Jonathan D. Uslaner (JU1942)
2121 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 819-3470
jonathanu@blbglaw.com

*Counsel for Additional Plaintiff City of Hialeah Employees' Retirement System*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I caused the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Leave to Amend the Complaint to be served upon all counsel of record via the ECF/PACER system.

*/s/ Karin E. Fisch*
Karin E. Fisch